Roberts and Wife v. Wilcoxson & Rose.

ROBERTS AND WIFE v. WILCOXSON & ROSE.

1. LIEN OF MATERIAL MAN: *Not waived by taking mortgage or attaching.*
  A mechanic's lien is not waived by his levying an attachment on the same property; nor is a lumberman's waived by his taking a mortgage on the property for the lumber debt.

2. SAME: *Decree enforcing, when too broad.*
  In a suit to enforce a lumberman's lien on a particular lot, it is error for the decree to extend the lien over upon other lots not mentioned in the bill.

3. SALE OF GOODS: *Interest on : Presumption as to time for payment.*
  For goods sold, interest accrues from the day for payment; and in the absence of evidence to the contrary, the presumption is, that they are to be paid for on delivery.

4. MARRIED WOMAN: *May convey as a femme sole.*
  Since the adoption of the constitution of 1874, a married woman may convey her estate and acknowledge the execution of a deed for registration as a *femme sole;* and if her acknowledgment be insufficient to admit it to registration, it will still be good between her and her grantee.

APPEAL from *Phillips* Circuit Court in Chancery.
Hon. J. N. CYPERT, Circuit Judge.

*John C. Palmer,* for appellants:

Contract, waiver of statutory lien. 25 *Am. Repts.,* 289. Mechanic's lien did not extend to lot No. 32, for want of proof of ownership. Decree vague as to boundaries.

*William W. Smith,* for appellees:

The two causes of action might be joined. If not, the error not properly met by demurrer. *Gantt's Digest, secs.* 4550, 4552, 4553. Trust deed no waiver, but cumulative security. *Stillwell v. Bertrand,* 22 *Ark.,* 379. It is matter of intention. 82 *Ill.,* 26. Implied waiver not favored. 25 *Ark.,* 570; 26 *ib.,* 617; 30 *ib.,* 172. That is question of fact, not raised by demurrer.

Decree not too broad in decreeing sale of two acres. *Gantt's Digest, sec.* 4063; *White v. Chaffin,* 32 *Ark.,* 59.

Interest in land sufficient. Cases *supra;* also, 5 *Ark.,* 238.

No error to give interest at 6 per cent. from date of filing. Attention of court not called to it, if wrong. *Const. of 1874, Art. XIX, sec.* 13; *Gantt's Digest, sec.* 1100.

Privy examination of wife not now necessary. *Const. of 1874, Art. IX, sec.* 7; 2 *Bishop Married Women,* 199, and

various cases to sustain this construction, cited from Maine, Massachusetts, New York, South Carolina, Illinois, Michigan, Wisconsin, Iowa, California. It has even been held that a law making a wife's property separate estate, gives power to convey. 39 *Ga.*, 41; 5 *Chicago Legal News*, 159. It is an enabling clause to be liberally construed. 17 *How. Pr.*, 413; *Goss v. Cahill*, 42 *Barb.*, 310; 6 *Smith Pa.*, 106; 10 *ib.*, 408; 24 *Miss.*, 181; 31 *Miss.*, 119; 43 *ib.*, 61 and 679; 15 *Mich.*, 447; 22 *ib.*, 255; *Wells v. Caywood (Colorado)*, 6; *Cent. Law J.*, 268.

Trust deed good without acknowledgment. 9 *Ark.*, 112; 14 *Ark.*, 294; 18 *ib.*, 85; 20 *ib.*, 190; 25 *ib.*, 152; 29 *ib.*, 548; 32 *Ark.*, 166.

ENGLISH, C. J.  On the thirteenth of August, 1878, Wilcoxson & Rose filed the bill in this case, on the chancery side of the circuit court of Phillips county, against J. P. Roberts and Lula A. Roberts, to enforce a lien for lumber, and foreclose a mortgage on a lot.

There were two Code paragraphs in the bill. In the first, the plaintiffs allege that they are partners and manufacturers of lumber, under the firm name of Wilcoxson & Rose. That defendant, J. P. Roberts, is indebted to them in the sum of $195.49 for lumber and materials, particulars of which are set out in an account herewith filed, marked "A," together with the credits to which the defendant is entitled, leaving due and unpaid the sum above mentioned. That said lumber and materials so furnished by plaintiffs, as aforesaid, were used in the construction of a dwellinghouse and other improvements upon lot numbered thirty-two (32), in the town of Poplar Grove, Phillips county, etc. That the delivery of said lumber was completed on the ninth of November, 1877, and on the thirteenth of Decem-

ber of the same year, the plaintiffs filed with the clerk of
the Phillips circuit court, a just and true account of their
demand, after allowing all credits, and containing a correct
description of the property sought to be charged with a
lien, verified by affidavit. That the clerk of said circuit
court indorsed upon said account the date of the filing
thereof, and made an abstract thereof in a book by him
kept for that purpose, and properly indexed, containing the
date of the filing, the names of the persons laying said lien,
the name of the person against whose property the lien
was filed, and made a description of the property to be
charged with the same.

In the *second paragraph* of the bill, it is further alleged
that, on the twenty-ninth day of October, 1877, plaintiffs
agreed to sell and deliver to defendant, J. P. Roberts, a
bill of lumber, amounting, together with what they had
already delivered him, to $212.65 ; whereupon, the defend-
ant, Lula A. Roberts, in consideration of the promise and
undertaking of the plaintiffs, made her promissory note of
that date, whereby she undertook to pay to the plaintiffs,
or their order, the sum of money last aforesaid, on the first
day of February next thereafter, with interest thereon from
the maturity thereof, at the rate of 10 per cent. per annum.
And to secure the payment of said note and interest, she
executed to the plaintiffs her certain deed of mortgage,
whereby she conveyed to said plaintiffs all her right, title
and interest in and to the above described lot in said town
of Poplar Grove, conditioned to be void upon the payment
of said debt, but in default of such payment, the said mort-
gagees were armed with a power of sale, and said mortgage
was properly acknowledged, and has been duly recorded in
the office of the recorder for said county. All of which will
more fully and at large appear by reference to said note
and mortgage deed, which are hereto annexed, marked

" B " and " C."   That on the ninth of November, 1877, the
plaintiffs delivered to said J. P. Roberts, and the said J.
P. Roberts accepted, the bill of lumber so ordered, being
the same the items whereof are set forth in *Exhibit A*, and
the value of which, together with that previously furnished
by the plaintiffs, and not paid for, was $210.49, and the
said defendant has never required of the plaintiffs the
remainder of the bill, to wit: $2.16, by reason whereof the
note is entitled to a credit of the sum last aforesaid.   It is
further entitled to a credit of $15 paid by said J. P. Rob-
erts on said ninth of November, 1877, leaving a balance
due of $195.49, and being the same debt mentioned in the
first paragraph of this complaint.   Plaintiffs aver that said
building materials were intended to be used, and were, in
fact, used in the improvement of the separate estate of
said Lula A. Roberts, to wit: in the construction of a
dwelling-house upon the lot aforesaid, in the town afore-
said; and that all the interest and estate which she has in
said premises was acquired by her since the first day of
November, 1874.

Plaintiffs pray for judgment against said J. P. Roberts
and Lula A. Roberts for the amount of said debt and inter-
est, to be levied out of the above described lot with im-
provements thereon, that said mortgage may be foreclosed,
and the equity of redemption of said defendants barred,
and that a commissioner may be appointed to sell said
premises, on default of payment, etc.

*Exhibit B* is the note of Lula A. Roberts, dated Poplar
Grove, October 29, 1877, whereby she promises to pay, on
the first day of February, after date, to Wilcoxson & Rose,
or order, $212.65, value received, secured by deed of trust,
bearing same date, with interest at the rate of ten per cent.
per annum.

*Exhibit C* is her mortgage, in which her husband did

not join, to secure the payment of the note, by which she conveys to Wilcoxson & Rose, all her right and interest in lot No. 32, in the town of Poplar Grove, etc., together with the improvements thereon, to be void on payment of the note and interest at maturity, and on failure, they are empowered to sell the premises on twenty days' notice, for cash, and apply the proceeds to the payment of the expenses of the trust, then the debt, etc.; and balance, if any, to pay to her. It bears date, twenty-ninth October, 1870.

The certificate of acknowledgment attached to the mortgage follows:

" STATE OF ARKANSAS,  
County of Phillips.

"Be it remembered, that on this, the twenty-ninth day of October, 1877, before me, the undersigned, an acting and duly commissioned notary public, within and for the county of Phillips, came Lue A. Roberts, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument of writing, as party thereto, and acknowledged the same to be her act and deed for the uses and purposes therein mentioned, and desired me to so certify, which is hereby accordingly done. In witness whereof, I have hereunto set my hand the day and year first above written.

"F. M. McCoy, N. P."

Seal attached.

Defendants demurred to the complaint, in short upon the record, by consent; the court overruled the demurrer; they rested, and final decree was entered tenth of June, 1879, as follows:

"It is therefore ordered, adjudged and decreed by the court, that the plaintiffs, etc., have and recover of J. P.

Roberts the sum of $212.93, being the amount of the account sued on in the first paragraph of said complaint, with lawful interest from the date of filing the same in the office of the clerk of this court. It is further ordered that this decree bear interest at the rate of six per cent. per annum from the rendition hereof until paid, and that defendant J. P. Roberts pay all the costs of this suit. It is further adjudged that plaintiffs, as the furnishers of materials for the erection of a dwelling-house upon lot thirty-two, in the town of Poplar Grove, have a lien upon whatever interest or estate the said J. P. Roberts may have in said premises, *as also upon all of his right and title to and of the lots contiguous thereto, not exceeding two acres, clear of said building;* and the execution of this decree may be enforced by the issue of a special *fieri facias* to be levied out of the above described property.

" And it appearing that the defendant Lula A. Roberts, had, for the purpose of securing the said debt hereinbefore mentioned, executed her deed of mortgage upon the same premises hereinbefore described, that said debt had been incurred in the improvement of her separate estate, and that her interest in said lot had been acquired since the first day of November, 1874. It is therefore ordered, adjudged and decreed by the court, that unless the said Lula A. Roberts shall, on or before the tenth day of September, 1879, pay to the plaintiffs the sum of money hereinbefore awarded to them, with interest and costs of suit, the said defendants shall be forever barred and foreclosed of all right and equity of redemption in and to said mortgaged premises, and the same shall be sold at the door of the court-house in Helena, to the highest bidder, upon a credit of three months, after due and legal notice of the time, terms, and place of sale; and the proceeds of such sale applied to the satisfaction of said debt, interest and costs

of suit," etc.   The decree proceeds to appoint the sheriff a. commissioner to make the sale.

The defendants appealed, and both of them with a surety, entered into a *supersedeas* bond.

It is not alleged in the bill that Lula A. Roberts is the wife of J. P. Roberts, but she is so described in the summons and in the decree.

I.   The first point made by counsel for appellant J. P. Roberts, is, that appellees waived their statute lien as material men on any interest he may have had in the lot, by taking the mortgage of Mrs. Roberts to secure the lumber debt, and that they must look alone to the mortgage lien.

The mortgage was taken on the twenty-ninth of October, 1877, and after that, on the thirteenth of December following, appellees filed their account against J. P. Roberts for the lumber in the clerk's office, with the view to fixing their statute lien, thereby showing that they did not intend to abandon their statute lien by taking the mortgage.

*Andrus v. Coleman, 82   Ill., 26 (25 American Rep., 289),* cited by counsel for appellant, is not in point.   There it was held that where the vendor of land conveys the same to a married woman, and takes a deed from her husband for other land with covenants of warranty, in part payment, and the husband's promissory note for the balance of the purchase money, this will be a waiver of his lien as vendor, and he must look to the husband alone for payment.

This is upon the principle that where the vendor takes a distinct and independent security for the purchase money, he waives his equitable lien on the land, but in such case it is a question of intention.   *Lavender, ad., et al. v. Abbott, ad., 30 Ark., 172 ; Harris v. Hanks et al. 25 Ib., 510.*

In this case lumber was furnished to improve a lot, and. appellees attempted to secure the debt by taking the wife's mortgage upon her interest in the lot, and afterwards fix-

Roberts and Wife ·v. Wilcoxson & Rose.

ing the statute lien on the husband's interest in the same lot.

A mechanic's lien is not waived by suing out an attachment, and levying on the same property. *Brennon v. Swasey, 16 California, 140.*

No good reason is perceived why the taking of the mortgage should be treated as a waiver of the right to fix the statute lien.

1. MECHANICS' LIEN: Not waived by levy of attachment, nor by taking mortgage, on same property.

II. The next point made for J. P. Roberts is, that the decree was broader than the allegations of the bill warranted. That the bill alleges that the lumber was furnished him to build a dwelling-house on lot number 32 in the town of Poplar Grove, and that the lien was fixed on that lot, and that the decree not only condemned his interest in that lot to be sold, but also all his right in, and title to, lots contiguous thereto, not exceeding two acres clear of the said building.

2. ———: Decree enforcing, when too broad.

The statute gives the lien on the land on which the building is erected, as well as on a convenient space around the same, and not exceeding two acres clear of the building. *Gantt's Digest, sec. 4063.*

What the size of lot number 32, in the town of Poplar Grove, is, does not appear by the allegations of the bill. Whether it contains more or less than two acres, we are unadvised.

The bill in one of its features is a proceeding *in rem* to enforce, in equity, a statute lien alleged to have been fixed on lot number 32, and it was error to attempt to extend the lien, by the decree, over upon contiguous lots not described in the bill.

III. It is submitted that it was error in the decree to allow interest on the lumber debt.

3. Interest on sale of goods.

The bill alleges that the delivery of the lumber was completed on the ninth of November, and the account for

a lien filed in the clerk's office on the thirteenth of December, 1877. The court allowed interest at six per cent. from the time of the filing of the account.

Looking at the account filed with the bill as *Exhibit A,* the first lot of lumber is charged as of July 31, the second lot as of August 2, and the third as of November 9, 1877, each lot consisting of a number of items, and the whole footed up $290.49. There are two credits as for payments in July, one in August, one ninth of November, 1877, all amounting to $95, which, deducted from the whole bill, leaves $195.49, the balance claimed to be due when the account was filed for a lien.

Presumption as to the time of payment for goods sold. The bill is silent as to whether the lumber was sold for cash on delivery or on credit, and no local custom is shown. In the absence of a showing to the contrary, the presumption is that it was to be paid for on delivery. *Hilliard on Sales, p. 177.*

The rate of interest upon all contracts and agreements, written or verbal, expressed or implied, for the payment of money, shall be six per cent., etc., unless otherwise expressly stipulated by the parties, or unless otherwise provided by law. *Gantt's Digest, sec. 4277; Constitution of 1874, Art. XIX, sec. 13.*

For goods sold interest accrues after the day of payment. *3 Parsons on Contracts, p. 103.*

It was not error in this case to allow interest on the balance due on the account from the date it was filed for action.

IV. The above are all the points made for appellant, J. P. Roberts.

The bill does not allege that he was the owner of, or had any interest in the lot in question, but avers that it was the separate estate of Lula A. Roberts, and that she acquired it since the first day of November, 1874, the date of the

adoption of the present constitution. Counsel for appellees say that the purpose of fixing a lien upon the lot, and enforcing it, as against him, was to charge and condemn his curtesy, use, etc., and yet the bill does not allege that he was the husband of Lula A. Roberts. Counsel of both parties, however, treat him as such in their briefs, but as no question as to his right to curtesy, or use in his wife's separate estate is presented, it may be passed over.

On this branch of the case the decree must be so modified as to condemn to sale all his right and title to the land on which the building was erected, for which the lumber was furnished, as well as a convenient space around the same, not exceeding two acres clear of the building, as provided by the statute, confining the lien, condemnation and sale to the limits of lot number 32, in the town of Poplar Grove, and not extending over upon contiguous lots.

V. On the second branch of the case, counsel for appellants complain of no error as to Lula A. Roberts; but she appealed from the decree, which states on its face that she is the wife of her co-defendant, J. P. Roberts, and forecloses a mortgage executed by her without joining her husband, and not acknowledged as required by the statute; and counsel for appellees submitting that the mortgage is nevertheless valid, under a provision of the present constitution, we do not feel at liberty to pass over this grave question, and affirm the decree as to her.

4. MARRIED WOMAN: May convey as a femme sole.

It is not a case of a bill to charge the wife's separate estate in equity for a debt contracted by her for its improvement, and to satisfy the debt out of the rents and profits (*Henry v. Blackburn, 32 Ark., 445*), but a bill to foreclose a mortgage made by her, upon her estate, as if a *femme sole*, to secure a debt contracted by her husband for lumber to improve her estate; and the decree foreclosed the mort-

gage, and condemned the *corpus* of the estate to be sold to satisfy the debt.

In *Scott et al. v. Ward, 35 Ark., 480,* it was decided that the wife could make a valid mortgage upon her estate to secure the debt of her husband, but in that case the husband joined with the wife in the deed, and she acknowledged its execution in the form required by the statute.

Section 7, Article IX, of the constitution, follows :

" The real and personal property of any *femme covert* in this state, acquired either before or after marriage, whether by gift, grant, inheritance, devise or otherwise, shall, so long as she may choose, be and remain her separate estate and property, and may be devised, bequeathed or conveyed by her the same as if she were a *femme sole;* and the same shall not be subject to the debts of her husband."

There was a similar clause in the constitution of 1868, omitting the words "*or conveyed.*"    *Sec. 6, Art. XII.*

By the common law a married woman could not convey her estate by deed, but by statute in this, as in most of the states, she was enabled to do so by joining her husband in the deed, and acknowledging its execution, in the form prescribed, on examination separate and apart from her husband.    *Gantt's Digest, secs. 838, 849; Little, Trustee, v. Dodge, administrator, 32 Ark., 458,* and previous cases cited.

May she now, under the above provision of the constitution, convey her estate, and acknowledge the execution of the deed for registration and notice merely, as if she were not a wife, though no legislative change has been made in the statute regulating the execution and acknowledgment of deeds since the adoption of the constitution of 1874?

In *Yale v. Dedesor, 18 New York, 271,* the court, by Justice Comstock, said: " The act of 1849, amending the law of 1848, provides that ' any married female may take, by inheritance, gift, etc., and hold to her sole and separate

use, and *convey* and devise real and personal property, etc., in the same manner and with like effect as if she were unmarried.' In respect to estates acquired and held under the protection of the statute, the disabilities of coverture would seem to be removed. A married woman may '*convey and devise*' real and personal property, as if she were unmarried. She may, therefore, dispose of lands in which she holds the legal title, without joining with her husband in the conveyance, and without the solemnity of private examination and acknowledgment. I think it is plain, however, that the statute does not remove her incapacity to contract debts. She may convey and devise her real and personal estate, but her promissory note, or other personal engagement, is void, as it always was by the rules of the common law," etc.

In *Blood v. Humphrey, 17 Barbour, 660*, the estate was conveyed to Mrs. Blood by her father, after the passage of the above statute; and after her husband had made improvements. She, as if *sole*, reconveyed the estate to her father, afterwards died, and her husband brought ejectment.

The court said: "There is nothing in the deed, or in the certificate of acknowledgment, to show that Mrs. Blood was a married woman. She does not acknowledge the execution of the deed on private examination, or apart from her husband, or acknowledge that she executed the same without any fear or compulsion of her husband. The question presented for our consideration is, whether this is a good acknowledgment under our statute. The Revised Statutes declare that the acknowledgment of a married woman, residing in this state, to a conveyance purporting to be executed by her, shall not be taken unless, in addition to the requirements contained in the preceding section (which provides for a general acknowledgment), she ac-

Roberts and Wife v. Wilcoxson & Rose.

knowledges, on private examination, apart from her husband, that she executed such conveyance fully, and without any fear or compulsion of her husband, nor shall any estate of any such married woman pass by any conveyance not so acknowledged. (*1 R. S., 758, sec. 10.*) By the third section of the act of April 7, 1848, as amended by chapter 375 of the laws of 1849 (*Laws of 1849, p. 528*), any married female may take, by gift, grant, devise or bequest, from any person other than her husband, and shall hold to her sole and separate use, and convey and devise, real and personal property, etc., in the *same manner*, and with like effect, as if she were unmarried. This statute declares that a married female may not only take and hold real estate, in the same manner, and with like effect, as if she were unmarried, but that she may convey the same, in the same manner, and with like effect. There is no doubt, if we are to give effect to the clear and explicit language of the statute, that this is a valid acknowledgment. Only admit that when a married woman has received a grant in fee of lands, since the passage of the act of 1848, and the amendment of 1849, she may convey the same, in the same manner, and with the like effect, as if she were unmarried, and the whole case is made out. This is certainly admitting no more than the statute itself declares she may do. Such, no doubt, was the design of the framers of the statute, etc. The legislature intended to remove the entire disability which both the common law and the statute had thrown around married women, not only as regards their right to take and hold, free and independent of their husbands, but, also, to remove the obstacles which had interposed against their conveying both by grant and devise, and to place them, so far as the lands which they held in their own right are concerned, on the same basis, precisely, as unmarried females."

*Andrews v. Shafer et al., 12 Howard Prac. Rep., 441,* follows the above case.

In *Richardson v. Pulver, 63 Barbour, 70,* it was said to be too late to question the correctness of the above decisions, and they were followed.

In an earlier case (*Wiles v. Peck, 26 New York, 42*), Justice SELDEN said if the question were then first presented, he might be inclined to hold otherwise. Mr. Bishop commenting on this remark, says: " The author believes, however, that this observation (of Justice SELDEN) was inadvertently made, and that the decisions on the point were correct. An unmarried woman can not be joined in her conveyance by the husband, for the reason that she has no husband; and, for the same reason, no privy acknowledgment—that is, acknowledgment apart from her husband—can be taken. Consequently, when a statute provides that a married woman may convey her lands 'in the same manner as if she were unmarried,' it is in terms directly repugnant to a prior one which required joinder of the husband and a privy examination, and supersedes it as to the estates to which it applies." *2 Bishop Married Women, sec. 199.*

Later on, in New York, a statute was passed, enabling married women not only to convey their separate estates, but to contract in reference to them, and to covenant to convey, etc., as if *sole. Prevot v. Lawrence, 51 New York, 221, and cases cited.*

In *Simms v. Hervey et ux, 19 Iowa, 273* (opinion of the court by Justice DILLON), held, that by an instrument duly executed, a wife might mortgage her separate estate to secure her own or her husband's debt. That prior to the adoption of the Code of 1851, the wife had to join with her husband, and acknowledge the execution of the deed on a privy examination, to make a valid conveyance of her interest in land. But the Code provided that a married

24—36

woman might convey her interest in real estate *"in the same manner as other persons,"* and that her common law disability to convey was thereby removed, and she was enabled to convey as if *sole,* or if she were a man; and her acknowledgment was only requisite for the purposes of registration and notice, and without it, the deed was valid between her and the vendee. See, also, *Robertson v. Robertson, 25 ib., 350.*

In Michigan, by statute of 1855, it was enacted that a married woman might convey her estate "in like manner and with like effect as if she was unmarried." In *Farr v. Sherman, 11 Mich., 33,* held: that the obvious intention of the act was to give to a *femme covert* the same control and power of alienation of her estate that she would have if a *femme sole,* and that the husband's assent was no longer necessary to render valid a conveyance by her of her separate estate as against herself. And in *Watson v. Thurber, Ib., 457,* that she might mortgage her estate to secure her husband's debt, and that an acknowledgment apart from her husband was not requisite to a valid conveyance or mortgage of her own estate.

And in *Burdeno v. Amperse, 14 ib., 97,* it was said that the effect of the statute was to make the husband, in law, a stranger to the wife's estate during coverture, instead of its possessor and manager.

In *Beard v. Dedolph et al., 29 Wis., 140,* it was held that the effect of a like statute was to place the wife, as to her separate property, upon the same footing as to the world, including her husband, as if she were, in the language of the statute, a " single person."

By the provision of our constitution, above copied, the separate estate of a married woman " may be conveyed etc., the same as if she were a *femme sole.* "

A *femme sole* has no husband to join with her in a deed.

She can not be examined in the absence of her husband, having none, nor, for the same reason, can she declare that she had executed the deed without compulsion or undue influence of her husband.

The bill alleges that the lot in question was acquired by Mrs. Roberts after the adoption of the present constitution, and was her separate estate. She had the right, therefore, to convey it as if a *femme sole.*

The acknowledgment made by her, above copied, omitting the word " *consideration,*" was not valid for registration and notice as against subsequent purchasers and imcumbrances, but the deed was nevertheless good between her and the mortgagees, she having conveyed as a *femme sole.*

The decree as to her must be affirmed, but the costs of this court must be paid by appellees, inasmuch as the decree has to be reversed and modified as to appellant J. P. Roberts, and the costs were not enhanced by the joining of the wife in the appeal.