Carrier v. The Chicago, R. I. & P. Ry. Co.

CARRIER v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY.

HIXON *et al.* v. THE SAME.

BLACKWOOD v. THE SAME.

LOUNSBURY v. THE SAME.

JAUGHN v. THE SAME.

1. **Statute of Limitations:** CARRIERS: UNREASONABLE CHARGES: ACTIONS BASED ON FRAUD. The provision of section 2530 of the Code, that in actions for relief on the ground of fraud the cause of action shall not be deemed to have accrued, for the purposes of the statute of limitations, until the fraud shall have been discovered, refers to the fraud named in the preceding section—that is, such as was "heretofore solely cognizable in a court of chancery." Accordingly *held* that actions at law for the recovery of unreasonable charges exacted by a carrier for the transportation of property, not being actions "heretofore solely cognizable in a court of chancery," accrued when the charges complained of were exacted and paid, and not when the fact was discovered that they were unreasonable and in excess of the charges made to other shippers from the same place. (See opinion for citations.)

2. ——: EXCEPTION: FRAUDULENT CONCEALMENT OF RIGHT OF ACTION: APPLICATION OF RULE. The rule announced in *District Twp. of Boomer v. French*, 40 Iowa, 601, that where the party against whom a cause of action exists in favor of another, by fraud or actual concealment prevents such other from obtaining knowledge thereof, the statute of limitations will only commence to run from the time the action is discovered, or might, by the use of diligence, have been discovered, is reviewed and adhered to; and in these cases, which are actions to recover freight charges exacted by defendant and paid by plaintiffs in excess of the charges habitually exacted by defendant of other shippers in like cases, it appearing that defendant fraudulently concealed from plaintiffs the fact of the discrimination, *held* that the actions did not accrue, nor the statute of limitations begin to run against them, until that fact was discovered.

*Appeal from Jasper District Court.*—HON. W. R. LEWIS, Judge.

FILED, JANUARY 25, 1890.

THESE several cases, involving the same questions, are submitted together. They are actions to recover back part of money paid by the plaintiffs, respectively, to the defendant, at different times, as freight charges on carloads of cattle shipped by plaintiffs from Jasper county, Iowa, to Chicago, Illinois. Each petition contains several counts, aggregating twenty-eight hundred and twenty-six; each count stating a separate cause of action in substantially the same terms, except as to the dates of shipment. The count set out in the abstract alleges that defendant is a common carrier; that, from January, 1879, to 1887, plaintiff was engaged in buying and shipping live stock from Jasper county, Iowa, over defendant's line of railway, to the Union Stock-Yards, at Chicago, Illinois; that on the fifth day of April, 1880, he shipped from Jasper county, over defendant's road, a car of cattle; that, for some months before and after date of said shipment, the usual tariff rate per car charged by defendant for transportation of live stock, per carload, over its line of railroad, from any point in Jasper county, Iowa, to the Union Stock-Yards, Chicago, was sixty dollars; that the defendant charged, and plaintiff paid, at the time of said shipment, the full tariff rate; that during the time of said shipment, and for a long time prior thereto, and after the said shipment, there were firms and individuals named, and others who were not known to the plaintiff, engaged in the same business as plaintiff; that during the time of said shipment the defendant gave and allowed to each and every one of said firms and individuals a drawback or rebate from the tariff rate, the exact amount of which is unknown to plaintiff, but is by him believed and averred to be seventeen dollars for each and every car shipped by any of them from any point in Jasper or Polk counties, Iowa, to Chicago, Illinois, so that, in effect, the tariff rate or freight per car charged by defendant and paid by plaintiff was seventeen dollars

per car more than the tariff rate or freight per car charged by defendant and paid by any other of said firms or individuals; that said drawback or rebate of the freight charges above set forth, granted and allowed by defendant, was accepted by each and every one of said firms and individuals, and that under said drawback or rebate the said firms and individuals did actually ship cars from and to the same point that plaintiff shipped them, as herein set out, and said shipments were made at and about the same date as plaintiff's shipments; that said drawbacks and rebates so granted by defendant to said firms and parties in effect reduced the freight or tariff rate per car seventeen dollars less than was charged by defendant and paid by plaintiff for the same service, that the said shipments made by plaintiff as herein set forth were from the same place, upon like conditions, and under similar circumstances, as the shipments made by said parties and firms above mentioned, and upon which the rebate, drawback and concessions of freight charges were allowed by defendant and accepted by said parties and firms separately, and the service rendered by defendant to plaintiff in the shipment herein set out was precisely the same and like service as it rendered the other parties and firms; that, by reason of the shipment made by plaintiff being for the same and like service, from the same place, upon like conditions, and under similar circumstances, as the shipments made by other parties, and there being a difference in the tariff rate per car of seventeen dollars charged and paid by plaintiff and the rate charged and paid by any of said other parties, the plaintiff avers that the rate charged and paid by plaintiff is and was unreasonable, and is and was an unjust discrimination.

And the plaintiff further avers that the rebate, concession and drawback herein complained of and charged to have been allowed by defendant to said other firms and parties was not known to plaintiff till shortly before the beginning of this suit, and the extra rate charged by the defendant was paid by plaintiff in ignorance of

the real rate charged and paid by the other parties. The plaintiff further says that the defendant openly promulgated, announced and published its tariff rate per car for transportation of live stock to Union Stock-Yards, Chicago, Illinois, from every point or station upon its line of railway in Iowa ; that the station agents at all stations in Iowa openly announced and declared said published and announced tariff rates to be correct, and that no cut, rebate or concession from the same was allowed, and that plaintiff believed and relied upon said statements ; that the rebates and concessions of said freight charges were a private and secret arrangement between the defendant and said shippers, and the knowledge of such rebates or concessions was by the defendant wrongfully and fraudulently withheld from plaintiff, and was wrongfully and fraudulently concealed from plaintiff by the defendant, and the shippers so favored with rebates or drawbacks were pledged and bound, under solemn promise, to reveal it to no one, and it never was by them revealed ; that plaintiff never knew of such rebates or concessions till about May, 1888, and by no means in his power could have discovered it ; but, believing in the averred public and published freight-tariff, paid the full charge thereof, not knowing of the fraudulent and dishonest and concealed rebate given as a favor by the defendant to said shippers who were at the time in competition with the plaintiff.

, Plaintiffs further say that they and each of them separately, at different times, and as often as four times in each of the years 1880 to 1884, inclusive, asked and ought of the defendant whether rebates or drawbacks were allowed or given or paid, as herein complained of; that said inquiries were oral, and were addressed to and answered by the defendant's station agents at Newton, the general freight agent at Chicago, and the Iowa stock agents at Des Moines; that said answers, uniformly, were that no rebates, drawbacks or freight concessions were given or allowed from the usual tariff rate to any one;

that all shippers were treated exactly alike, and, if any rebate or drawback ever was granted or paid to any one, a like amount would be granted and paid on every shipment of plaintiff's; that said answers were false, and so known to said officers, and each of them, at the time it was told, and was so told with intent to defraud and deceive plaintiff, and to prevent him from acquiring knowledge of the existence of the cause of action set forth in this count, and that plaintiff relied upon said false representations; that said inquiry and false answers were made both before and after the shipments were made, and by it the plaintiff was induced to and did pay the money herein alleged; that the plaintiff, so believing, was deceived by said false answers, and was thereby prevented from acquiring knowledge of the existence of the cause of action set up in this count; that, had the truth been told, the knowledge of said cause of action would have come to plaintiff, and this action would have been brought, long before the period of five years from the time of the shipment herein set out; that, had the truth been told, the plaintiff would not have paid out his money; that said plaintiff has been damaged by the unjust, unreasonable and extortionate rate charged by the defendant and paid by plaintiff as aforesaid, and on account of the unjust discrimination as aforesaid, in the sum of ninety dollars, no part of which has been paid, or in any way satisfied, to the plaintiff.

The defendant demurred to twenty-one hundred and sixty-six of these counts, for the following reasons : (1) Said counts, and each of them, show on their face that the cause of action in each count is barred by the statute of limitations; (2) said counts, and each of them, show that the cause of action therein set out accrued to plaintiff or his assignor more than five years prior to the commencement of this action, to-wit, more than five years prior to April 24, 1888; (3) said counts do not, nor do either of them, show any fraud as the basis of said action or otherwise, heretofore solely cognizable in equity; (4) said counts do not, nor do either of them, show any

concealment of said alleged cause of action, such as in law defeats or stops the bar of the statute. The demurrers were overruled, and, the defendant electing in each of said causes to stand on the demurrer as to the several counts demurred to, the court rendered judgments against the defendant for the amount covered by the several counts, to all of which defendant, in each case, at the time excepted, and from which it appeals to this court, assigning as error the overruling of said demurrers and rendering said judgments.

*Thos. S. Wright* and *Winslow & Varnum*, for appellant.

*A. Clark*, for appellees.

GIVEN, J.—I. When these causes of action are alleged to have accrued, there was no statute, state or national, fixing rates, nor providing for equality of rates; hence the right of the plaintiffs to maintain such actions must be determined by the common law. It is not questioned but that at common law a common carrier was only entitled to charge reasonable rates, and was liable to an action for unreasonable charges. The counts demurred to show that the alleged causes of action accrued more than five years before the bringing of these actions. The sole question presented in the record and arguments is whether the counts contain such allegations as take the cases out of the provisions of paragraph 4, section 2529, Code, limiting the bringing of actions "founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud, in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years" after the causes accrue. Section 2530, Code, provides that in actions for relief on the grounds of fraud or mistake, and in actions for trespass to property, the cause of action shall not be deemed to have accrued until the

*Margin note: 1. STATUTE of limitations: carriers: unreasonable charges: actions based on fraud.*

fraud, mistake or trespass complained of shall have been discovered by the party aggrieved. The fraud here contemplated is that defined in the preceding section, to-wit, such as was heretofore solely cognizable in a court of chancery. *Gebhard v. Sattler*, 40 Iowa, 152; *Brown v. Brown*, 44 Iowa, 349; *Phœnix Ins. Co. v. Dankwardt*, 47 Iowa, 432; *Higgins v. Mendenhall*, 51 Iowa. 141. These are law actions, and clearly not such as were heretofore solely cognizable in a court of chancery, and therefore not within this exception to the general statute of limitation.

II.   It is not contended that they are within any of the other expressed exceptions to the general statute; but appellees rely upon the rule laid down in *District Twp. of Boomer v. French*, 40 Iowa, 601, and cases cited as approving and following that case. That was an action to recover moneys alleged to have been received by the defendant French, as treasurer of the plaintiff township, and appropriated to his own use. The petition alleged that at the close of his term a partial settlement was had with the defendant, but, by means of false and fraudulent entries in his books as treasurer, and by means of fictitious entries and corrupt and fraudulent concealments and misrepresentations, the defendant kept from the plaintiff's knowledge the fact of the receipt of said sum until October, 1883, and plaintiff had no knowledge of the facts, or of the gross frauds perpetrated by defendant, till said date. The petition showing that the action was not brought within three years, defendant demurred, on the ground that the action was barred. The demurrer was sustained, and plaintiff appealed. This court, after citing Code, section 2530, says: "This action does not come within the language or meaning of the section quoted, for the reason that the action is not for relief on the ground of fraud, but on the ground that the defendant failed to pay over money received by him. The cause of action does not grow out of the fraud alleged. It existed independent of the fraud. Under the provisions of the

2. ——: exception : fraudulent concealment of right of action : application of rule.

section quoted above, the fact that the plaintiff, by reason of the fraud of the defendant, failed to discover the cause of action, does not defeat the bar of the statute. That is defeated, by the terms of that section, only where the cause of action is grounded in fraud."

There is some contention as to whether these actions are for unreasonable charges and unjust discriminations, or for unreasonable charges only, Mere discrimination, without injury, would not be actionable. When the discrimination is by charging unreasonably, it is the unreasonable charge that is the ground of the action. The ground of the action against French was his failure to pay the money received; the ground of these, the defendant's failure to pay back the money charged and received in excess of what was reasonable. In each case the plaintiffs have a cause of action independent of the frauds alleged. These cases, like that of *District Township v. French*, measured by the statute alone, are clearly barred; but in that case this court held the rule to be that, "where the party against whom a cause of action existed in favor of another, by fraud or actual fraudulent concealment prevented such other from obtaining knowledge thereof, the statute would only commence to run from the time the right of action was discovered, or might, by the use of diligence, have been discovered." Appellant contends that these cases are distinguishable from that; that French occupied a fiduciary relation towards the township, by virtue of which it was his duty to disclose the truth, and especially not to deceive, while such was not the legal duty of this defendant. The defendant is a *quasi* public corporation, owing certain duties to the public; and, in the absence of statute, fixed its rates without other restriction than that they should be reasonable. It was said in *Heiserman v. Railway Co.*, 63 Iowa, 736, that "railroad companies are public carriers, and those who employ them are in their power, and must bow to the rod of authority which they hold over consignors and consignees of property transported by them." The reason for the rule requiring disclosures and fair dealing

applies to this defendant with the same force that it did to French.

III. Appellant contends that when exceptions are provided to a general statute it excludes all others than those expressed, and that the courts are not at liberty to ingraft other exceptions than those expressed upon such a statute. This claim finds strong support in the following cases, cited by counsel: *Bank v. Kissane*, 32 Fed. Rep. 429; *Engel v. Fischer*, 7 N. E. Rep. 300; *Fee v. Fee*, 10 Ohio, 470; *Amy v. Watertown*, 22 Fed. Rep. 418; *Bank v. Dalton*, 9 How. 526; *Kendall v. United States*, 107 U. S. 125, 2 Sup. Ct. Rep. 277; *Favorite v. Booher's Adm'r*, 17 Ohio St. 554; *Wood-burry v. Shackleford*, 19 Wis. 65; *Freeholders v. Veghte*, 44 N. J. Law, 509; *Demarest v. Wynkoop*, 3 Johns. Ch. 143; *Miles v. Berry*, 1 Hill (S. C.) 296; *Troup v. Smith*, 20 Johns. 33. These precise questions were presented and passed upon in a number of those cases, and the doctrine announced that the general statute was an exclusion of all others, and that when the legislature has made exceptions the courts can make none, as that would be legislation. Several decisions by this court are also cited in support of these propositions. In *Campbell v. Long*, 20 Iowa, 382, the questions were as to the extension of time granted to minors, and whether ignorance of a right would prevent the operation of the statute. The court says that "but for the exception in the statute it would run against minors and adults alike, and courts are not at liberty to ingraft upon the statute exceptions which the legislature did not deem necessary." "No fraud is charged upon defendants." It was simply a question whether ignorance of a right would prevent the running of the statute. In *Shorick v. Bruce*, 21 Iowa, 307, the court says: "The thought that the statute would not run because Wilson, the ward, was a person of unsound mind or incapacitated to sue, finds no support either in the statute or in the rules of the common law." In *Relf v. Eberly*, 23 Iowa, 469, the question was whether plaintiff's case, as made by his petition, was, prior to the statute, and,

within its meaning, solely cognizable in a court of chancery. Speaking with reference to this question, the court says: "Our opinion, therefore, is that in cases of fraud, when the plaintiff's remedy is concurrent,—that is, when he could have the same relief either at law or in equity,—the action must be commenced within five years after the perpetration of such fraud, and that he could not sue within that time after the discovery." The question under consideration was not noticed in that case, and the same is true of *Gebhard v. Sattler*, 40 Iowa, 152. In *Miller v. Lesser*, 71 Iowa, 147, the question was whether the fact that the defendant changed his name, and that his place of residence was unknown to plaintiff, would prevent the running of the statute. The right of the courts to apply exceptions recognized at common law, other than those named in the statute, was not directly in question in either of these cases; and neither of the exceptions sought to be applied are such as were recognized at common law.

IV. *District Twp. v. French* finds strong support in the authorities cited in the opinion, Reference to *Sherwood v. Sutton*, 5 Mason, 143, wherein Judge STORY reviews many of the English and American cases, and to the cases cited by appellant, shows a diversity of rulings on this question by the courts of different states. It is true that some of the cases were under statutes that did not contain an exception as to actions for relief on the grounds of fraud, but the question was whether, in the absence of such an exception in the statute, the courts might apply it, just as in *District Twp. v. French*, the question was whether the court might apply the common-law exception announced, though not expressed in the statute. If the question was before us for the first time, we might hesitate to declare the rule announced in *District Twp. v. French*; but that case, sanctioned by a long line of respectable authorities, has stood unquestioned as the law of the state for many years, with several sessions of the legislature intervening, and has been cited, and

more or less directly followed and approved, in *Humphreys v. Mattoon*, 43 Iowa, 556; *Findley v. Stewart*, 46 Iowa, 655; *Brunson v. Ballou*, 70 Iowa, 34; *Bradford v. McCormick*, 71 Iowa, 129; *Wilder v. Secor*, 72 Iowa, 161; *Shreves v. Leonard*, 56 Iowa, 74. We think there is no sufficient reason for now reversing the conclusion announced in *District Twp. v. French, supra.*

It only remains to determine whether the plaintiffs' petitions alleged such fraud, or actual fraudulent concealment, by the defendant, as prevented them from obtaining knowledge of their causes of action within five years next preceding the commencement of these actions. It is alleged that plaintiffs were induced to and did pay the rates charged upon representations that they were the usual rates, and the same that were being charged to all others for the same service, and upon the promise that if any rebate was granted to any one a like amount would be granted to plaintiffs; that a less rate was being charged to the shippers named and others, which fact was fraudulently concealed from plaintiffs; that the representations were false, and known to the defendant's officers and agents making them to be so, and were made to prevent plaintiffs from acquiring knowledge of the fact that they were and had been charged and had paid unreasonable rates. Our conclusions are that the rule laid down in *District Twp. v. French* should be sustained, and that the allegations in the counts demurred to bring them within this rule, and that there was no error in overruling the appellant's demurrer.                      AFFIRMED.