## CONDITT v. HOLDEN.

### Opinion delivered December 13, 1909.

1. LIMITATION OF ACTIONS—FRAUDULENT CONCEALMENT.—Where there has been a fraudulent concealment of a cause of action, the statute of limitations does not begin to run until the discovery of the fraud. (Page 621.)

2. SAME—FRAUDULENT CONCEALMENT OF ESTRAY.—In a suit to recover an animal alleged to be held as an estray evidence that defendant took up the animal without any *bona fide* claim of title, and kept it for more than three years without complying with the statute with reference to estrays, and that plaintiff brought replevin soon after he discovered where the animal was, would justify a finding that defendant fraudulently concealed the cause of action from plaintiff. (Page 621).

Appeal from Jackson Circuit Court: *Charles Coffin,* Judge; reversed.

*Manning & Emerson,* for appellant.

Appellees, having failed to comply with the law with reference to the taking up of estrays, are not entitled to relief under the statute of limitations, and will not be heard to say that the statute began to run in 1904. Kirby's Dig., §§ 7833 to 7856, inclusive. The bar of the statute is postponed or avoided by fraud in the defendant committed under such circumstances as to conceal from the plaintiff all knowledge of the fraud, and thus prevent him from asserting his rights. 68 Ark. 455; 25 Cyc. 1173. The statute runs only from the time the fraud is discovered. 61 Ark. 527; 139 Ind. 545; 91 S. W. 866; 90 S. W. 884; 112 N. W. 184; 89 Pac. 317; 85 S. W. 761; 2 App. D. C. 387; 9 L. R. A. 764; 31 Me. 448; 82 N. E. 505.

*Joseph W. Phillips* and *Gustave Jones,* for appellees.

The mule was never concealed nor hidden, but was taken possession of by appellees at a public gathering, under the belief and claim that it was their property, and was held as such, openly and notoriously, continuously thereafter. There is no evidence of fraud. By inquiry appellant could have learned at any time that appellees had taken up and claimed the mule as their own. "The statute begins to run with the possession." 44 Ark. 30. See also 10 Ark. 238.

McCULLOCH, C. J. This is an action to recover possession of a mule. In the trial below plaintiff introduced testimony tending to show that he was the owner of the property in controversy, and that defendants' possession was wrongful. Defendants introduced no testimony, but the court instructed the jury peremptorily to return a verdict in favor of defendants on the ground that they had been in possession of the mule for more than three years, and that plaintiff's right of action was barred. The testimony introduced by plaintiff was sufficient to establish the following state of facts:

Plaintiff, who is a farmer living at Tuckerman, in Jackson County, Arkansas, owned the mule in controversy. In the fall of 1903, when the mule was less than two years old, it was on the range near what is known as the Hale Place, in Jackson County, with other mules owned by plaintiff. The Hale Place is about three miles distant from the defendants' farm. He

lost trace of the mule, and did not see it again until he found it in possession of defendants in June or July, 1908. He identified the mule by its color and size, and by the brand "RC" on its left shoulder, which he had put there when the mule was a colt. Defendants claimed to have purchased the mule from a man named O'Neal, but there is testimony tending to show that this is untrue, and that, when confronted with the fact that the mule bought from O'Neal had died, they claimed that they got this one from a man named Yelvington. The defendants refused to give up the mule, and this action was commenced on July 22, 1908.

Dave Conley testified that in March, 1904, a mule of the same description as the one in controversy followed his mare out of a deadening near the Hale Place, and followed the mare when he rode her over to a log rolling on defendants' farm; that when he hitched the mare at the log rolling the mule grazed nearby. He said that one of the defendants "sorter quizzed" him about the mule, asked who owned it, where it came from, whether or not it was branded, etc., and finally caught the mule and carried it off. Other witnesses identified the mule as the one which followed Dave Conley's mare to the log rolling, and all testified that the mule was branded "RC" at that time. Plaintiff testified that between the time he first found the mule in the possession of defendants and the trial the brand on the mule had been tampered with in an attempt to change it.

The evidence adduced at the trial, which, for the purpose of testing its sufficiency to support a verdict, we must accept as true, shows that the mule in controversy was and is the property of plaintiff; that it became an estray in the year 1904, and was taken up by defendants and converted to their own use without posting the animal in the manner prescribed by statute. They laid claim to the animal as their own when they took it up, but the evidence shows that this claim was entirely unfounded, and that it was not made in good faith. The statutes of this State provide that a person taking up an animal which is an estray shall immediately post it, examine the records for corresponding marks or brands, report it to a justice of the peace, cause it to be appraised, and exhibit it in the stray pen of the county between the hours of eleven o'clock A. M. and three

o'clock P. M. on the first day of the next succeeding term of the circuit court. The statute also provides that "if any person shall fail to advertise any estray according to law, he shall be deemed guilty of a misdemeanor," etc. Kirby's Digest, § 7867.

The defendants did not attempt to comply with the statute, but on the contrary they wrongfully and unlawfully claimed the mule as their own, and kept it on and about their farm for over four years, until the true owner claimed it. This conduct not only rendered them guilty of a criminal offense, but it was a fraud on the plaintiff's rights which amounted to a fraudulent concealment from plaintiff of his right of action against them for the recovery of his property. Under these circumstances they cannot invoke the benefit of the statute of limitation, which began to run against plaintiff only from the time of his discovery of the fraud.

A section of our statute of limitations provides that "if any person, by leaving the county, absconding or concealing himself, or any other improper act of his own, prevent the commencement of any action in this act specified, such action may be commenced within the times respectively limited, after the commencement of such action shall have ceased to be so prevented." (Kirby's Dig., § 5088.) This court has held that the statute just quoted applies to one who has fraudulently concealed the existence of a cause of action against him. *McKneely* v. *Terry,* 61 Ark. 527. Similar statutes have been so construed by other courts. *Traer* v. *Clews,* 115 U. S. 528; *Eising* v. *Andrews,* 66 Conn. 58. But, apart from that statute, and without it, it is generally held that where there has been a fraudulent concealment of a cause of action, the statute of limitations does not begin to run until the discovery of the fraud. *McKneely* v. *Terry, supra;* 25 Cyc. 1173; *Dorsey Mach. Co.* v. *McCaffrey,* 139 Ind. 545; *Carrier* v. *Chicago, R. I. & P. Ry. Co.,* 79 Ia. 80; *Faust* v. *Hosford,* 119 Ia. 97; *Wear* v. *Skinner,* 46 Md. 257.

The question of ownership, as well as the question of fraudulent concealment from plaintiff of his right of action, should have been submitted to the jury. There was sufficient evidence to sustain a verdict in favor of plaintiff on both issues. The evidence established his title to the mule beyond question, and all the circumstances proved, when considered together, tended

to establish the fraudulent concealment of the right of action. Reversed and remanded for new trial.