STATE OF TENNESSEE *v.* BARTON.

4-7984                                          198 S. W. 2d 512

Opinion delivered December 2, 1946.

Rehearing denied January 27, 1947.

*Scott Wood,* for appellant.

*James R. Campbell,* Guardian *Ad Litem.*

*Curtis L. Ridgway* and *Mallory, Rasmussen & Johnson,* for appellee.

MINOR W. MILWEE, Justice. Dr. D. S. Barton and his wife, Loretta Barton, were residents of Hot Springs, Garland county, Arkansas, in 1918 when she became insane. Loretta Barton was reared in Nashville, Tennessee, where her mother still resided on June 21, 1920, when Mrs. Barton was committed to the Central State Hospital in Nashville, Tennessee, by order of the county court of Davidson county. She was admitted to the

Tennessee hospital as a third class, or private pay, patient and the order of commitment recites the appointment of Mrs. Barton's mother as her guardian. The order also found: "That the said Mrs. Loretta Barton has relatives who are amply able to pay for her maintenance while in said hospital as her husband is a man of means living in Hot Springs, Ark."

On February 21, 1921, D. S. Barton was appointed guardian of the person and estate of his incompetent wife by the Probate Court of Garland county, Arkansas. In 1925, Dr. Barton sold certain real estate for $12,000, and $4,000 of the sale price was set aside by the Garland Chancery Court, under the insane wife's dower statute. (Pope's Digest, §§ 4447-51).

On February 26, 1926, D. S. Barton secured an interlocutory decree of divorce in the district court of Salt Lake county, Utah, on the ground of incurable insanity. The decree became final on August 27, 1926.

Mrs. Barton owned income producing property in her own right of the value of $12,000 at the time D. S. Barton was appointed guardian of her person and estate in 1921. Dr. Barton paid for the maintenance and hospitalization of Loretta Barton at the rate of $400 per year from June 21, 1920, until April 24, 1933. Although these payments were ostensibly made by Dr. Barton personally, he was reimbursed out of the income from the estate of Loretta Barton and credited with such payments in his settlements filed with the Garland Probate Court as guardian and curator of her estate.

On April 12, 1933, D. S. Barton wrote a letter to the superintendent of the Central State Hospital at Nashville, Tennessee, in which he stated: "I am writing you in regard to the payments which I have been making for the past ten years for the hospitalization of Mrs. Loretta Barton.

"Due to the existing economic conditions I find myself financially unable to further make these payments. You will note that in past I have been very prompt with

these, but at the present time I cannot continue to care for them.

"Kindly advise me what provisions can be made."

As a result of the representations made in this letter, the Davidson County Court authorized the hospital authorities to transfer Loretta Barton to the status of a state pay patient on April 24, 1933, and payments for the incompetent's hospitalization were discontinued.

On December 16, 1941, D. S. Barton filed a petition in the Garland Chancery Court for an order directing the clerk of that court to pay over to him the $4,000 fund set aside under the insane dower statute in 1925 because of the rendition of the Utah divorce decree in 1926. The decree was attached to the petition and contains the following provision: "That Dudley S. Barton, the above named plaintiff, be, and he is hereby, ordered and directed to support and maintain the said Loretta Y. Barton, during her detention as an insane person in the Central State Hospital, in the State of Tennessee, as the same may be demanded of him by said Central State Hospital of Nashville, Tennessee."

The prayer of the petition was that the chancery court give full faith and credit to the Utah decree and that the $4,000 fund be ordered paid over to petitioner free from any legal or equitable claims. A summons, with a copy of the petition attached thereto, was served on the superintendent of the Central State Hospital where Mrs. Barton was still confined. The court appointed a guardian *ad litem* for Loretta Barton who filed a demurrer and answer denying the allegations of the petition.

On May 6, 1942, the State of Tennessee, through the Department of Institutions, intervened in the suit instituted by Dr. Barton claiming that the income from the $4,000 trust fund, being administered by the chancery court under the dower statute, should be applied to the payment of Mrs. Barton's maintenance in the Central State Hospital of Tennessee since April, 1933. Various amendments to the intervention were filed to-

gether with a cross-complaint against D. S. Barton individually and as guardian of Loretta Barton's estate. It was alleged in the cross-complaint that Dr. Barton accepted the Utah divorce decree subject to the provision that he support his wife during her detention in the Tennessee hospital. It was further asked that, if the court should find that D. S. Barton was not personally liable for the debt due the State of Tennessee, then recovery should be allowed against him as curator of the estate of Loretta Barton.

On September 15, 1942, the chancery court entered its order holding that the divorce granted to Dr. Barton did not terminate the trust created under the insane dower statute, and the petition of Dr. Barton was denied, but the cause continued for a hearing on the claim of the State of Tennessee. There has been no appeal from this order.

In April, 1944, the guardian *ad litem* filed a cross-complaint in which it was alleged that the Utah divorce decree was granted upon condition that D. S. Barton pay the expenses of Loretta Barton in the Central State Hospital of Tennessee; that when he made the statement to the hospital that he was no longer able to pay for the support of Mrs. Barton, he was receiving substantial income from property belonging to her separate estate as well as the trust fund which was being administered by the court.

In his reply to the intervention of the State of Tennessee, D. S. Barton alleged that his wife was a resident of the State of Tennessee at the time she was placed in the hospital by her relatives; that there is nothing due the State of Tennessee for maintenance, since she was placed on the free list of patients by order of the county court of Davidson county, Tennessee; and that the claim was barred by the three-year statute of limitations.

After hearing the evidence, the trial court entered its final decree awarding judgment in favor of the State of Tennessee against D. S. Barton, as guardian of Lo-

retta Barton, in the sum of $2,500 for hospital maintenance of Mrs. Barton to August 6, 1945, with interest at 6 per cent from the date of the decree, December 17, 1945, and directed the guardian to pay the State of Tennessee $100 per quarter thereafter so long as Mrs. Barton remained in the hospital. The court held the three-year statute of limitations applicable and the $2,500 judgment represents payments of $100 per quarter from May 6, 1939, which date was three years prior to the filing of the intervention by the State of Tennessee on May 6, 1942. It was further held that D. S. Barton was not liable individually and the cross-complaint against him was dismissed. 'The State of Tennessee and the guardian *ad litem* have appealed from this decree.

It is the contention of appellants that the trial court erred in refusing to hold D. S. Barton liable personally for the maintenance and hospitalization of Loretta Barton since the discontinuance of the quarterly payments in April, 1933. We think this contention should be sustained. The personal obligation of Dr. Barton to pay for such maintenance is based upon the Utah decree of divorce. Although Dr. Barton especially prayed that the chancery court accord full faith and credit to the Utah decree in his petition to recover the dower fund, it is now insisted that that part of the decree which requires him to pay the hospital maintenance is not entitled to full faith and credit because no specific sum of money was adjudged to be due and payable in all events, but a condition is annexed to the decree which renders the sum payable thereunder uncertain. His insistence now is that this part of the decree is not enforceable in this state and the ten-year statute of limitations (Pope's Digest, § 8937), which applies to decrees, is not applicable. This presents an interesting question, but in view of the principles which will now be discussed, we deem it unnecessary to decide it.

In 17 Am. Jur., Divorce and Separation, § 460, pp. 376-7, it is said: "One seeking relief from a divorce decree may, by reason of his conduct subsequent to the

822

rendition of the decree, be estopped from attacking it. Thus, one cannot be relieved from a judgment of divorce after using the privileges which it confers; in other words, one cannot accept benefits of a decree and yet not be bound by its burdens.''

In 19 Am. Jur., Estoppel, § 64, pp. 682-7, in a discussion of the broad general rule of acceptance of benefits it is stated: ''Estoppel is frequently based upon the acceptance and retention by one having knowledge or notice of the facts of benefits from a transaction, contract, instrument, regulation, or statute which he might have rejected or contested. This doctrine is obviously a branch of the rule against assuming inconsistent positions, and it has been said that such cases are referable, when no fraud either actual or constructive is involved, to the principles of election or ratification rather than to those of equitable estoppel. The result produced, however, is clearly the same and the distinction is not usually made. Such estoppel operates to prevent the party thus benefited from questioning the validity and effectiveness of the matter or transaction in so far as it imposes a liability or restriction upon him, or, in other words, it precludes one who accepts the benefits from repudiating the accompanying or resulting obligation.'' In a continuation of the discussion of this principle, at page 690, the textwriter states that it is applicable ''to prevent one who accepts the benefit of a judgment or decree from questioning its validity or opposing the enforcement of its terms.''

In his suit to recover the trust fund created for the benefit of the wife under the insane dower statute, Dr. Barton necessarily assumed a position adverse to the interest of his ward. While the suit was filed in the form of an *ex parte* proceeding, it was in effect a suit by Dr. Barton individually against himself, as guardian of Loretta Barton's estate. For this reason, the chancellor appointed an attorney as guardian *ad litem* to represent Mrs. Barton in the proceedings. The guardian *ad litem* filed various pleadings, but did not plead the

statute of limitations as a bar to the claim of the State of .Tennessee.

The case of *Conditt* v. *Holden*, 92 Ark. 618, 123 S. W. 765, 135 Am. St. Rep. 206, was an action in replevin where defendant had taken up an estray in bad faith and failed to publish the statutory notice. It was held that the statute of limitations did not begin to run against the owner of the animal until he discovered the fraud. Section 8952 of Pope's Digest is a section of our statute of limitations and provides: "If any person, by leaving the county, absconding or concealing himself, or any other improper act of his own, prevent the commencement of any action in this act specified, such action may be commenced within the times respectively limited, after the commencement of such action shall have ceased to be so prevented." This action was held applicable in the Conditt case, *supra*, but Chief Justice McCULLOUGH, speaking for the court, said: "But, apart from that statute, and without it, it is generally held that where there has been a fraudulent concealment of a cause of action, the statute of limitations does not begin to run until the discovery of the fraud. *McKneely* v. *Terry*, 61 Ark. 527, 33 S. W. 953; 25 Cyc. 1173; *Dorsey Mach. Co.* v. *McCaffrey*, 139 Ind. 545, 38 N. E. 208, 47 Am. St. Rep. 290; *Carrier* v. *Chicago, R. I. & P. Ry. Co.*, 79 Ia. 80, 44 N. W. 203, 6 L. R. A. 799; *Faust* v. *Hosford*, 119 Ia. 97, 93 N. W. 58; *Wear* v. *Skinner*, 46 Md. 257, 24 Am. St. Rep. 517." This holding was reaffirmed in *Kurry* v. *Frost*, 204 Ark. 386, 162 S. W. 2d 48, where this court said: "Apart from this statute (§ 8952, Pope's Digest) many cases hold, as does the case of *Wright* v. *Lake*, 178 Ark. 1184, 13 S. W. 2d 826, that, where there has been a fraudulent concealment of a cause of action, the statute of limitations does not begin to run until the fraud is discovered."

Dr. Barton occupied a peculiar position of trust with respect to both Loretta Barton and the State of Tennessee, on whom the burden of caring for his ward had been placed. As the New York court, speaking through Chief Justice CARDOZA, said in the case of *Meinhardt* v. *Salmon*, 249 N. Y. 458, 164 N. E. 545, 62 A. L. R.

1, ''A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.'' The State of Tennessee was never apprised of the Utah divorce decree nor the fact that Loretta Barton was the owner of a separate estate in Garland county, and that fact was concealed from it by Dr. Barton until the instant suit was begun. It is true that mere ignorance of one's rights does not prevent the operation of the statute of limitations, but ignorance produced by the affirmative and fraudulent act of the debtor does prevent the bar of the statute.

The correspondence between Dr. Barton and the Tennessee hospital authorities reveals that the latter had implicit confidence in the truth of the representations made by Dr. Barton in his letter of April 12, 1933. Dr. Barton stated in this letter that he had been making the payments for Loretta Barton's maintenance personally and that he was no longer able to make them, when, in fact, all the payments had been made from the income of her separate estate. The statements filed by Dr. Barton as guardian and curator of Mrs. Barton's estate show that the annual income from said estate was more than sufficient to pay for her maintenance at the time these representations were made. The State of Tennessee relied and acted upon these representations and was thereby induced to classify Mrs. Barton as a pauper, or state pay patient. Under these circumstances, we think Dr. Barton should be estopped to plead the statute of limitations either individually, or as guardian and curator of Loretta Barton's separate estate.

It is expressly provided in the Utah divorce decree that Dr. Barton should pay the State of Tennessee for the support of his incompetent wife. Having accepted the benefit of the divorce decree, Dr. Barton should be precluded from questioning the validity of the burden imposed by the express condition on which the decree was granted, which requires him to pay for her support and maintenance during her detention in the hospital.

Appellees also insist that appellants are not entitled to interest except from the date of judgment. The cross-complaint of the State of Tennessee does not expressly pray for interest, but it does pray for its debt, costs and other relief. Under a complaint containing a similar prayer in the case of *Texas & St. Louis Railway Co.* v. *Donnelly,* 46 Ark. 87, this court held the prayer sufficient to include interest and said: "The complaint alleges that the amount was due and was unpaid, and the rule is that money due by contract shall bear interest from the time it is payable. *Roberts* v. *Wilcoxson,* 36 Ark. 355." Mrs. Barton was placed in the hospital as a private pay patient and the statutory charge of $100 per quarter was paid without objection from 1920 until April, 1933. There was an implied, if not an express agreement, that the statutory charge would be paid, and the claim of the State of Tennessee is not a mere open account as contended by appellees.

It is our conclusion that appellee, D. S. Barton, is individually and primarily liable for payment of the claim of the State of Tennessee under the terms of the Utah divorce decree, and that the separate estate of Loretta Barton is also liable for payment of the claim in the event satisfaction thereof cannot be had from D. S. Barton personally.

It follows that the decree will be reversed and the cause remanded with directions to enter judgment in favor of the State of Tennessee against D. S. Barton individually, and as guardian and curator of the estate of Loretta Barton, for all the quarterly payments of $100 each maturing and becoming due since April 24, 1933, together with interest at six per cent. per annum from the date each quarterly payment became due and payable. It is further directed that satisfaction of this judgment first be sought from D. S. Barton, and that, if his property be found insufficient to satisfy the judgment, any balance remaining be paid out of the separate estate of Loretta Barton.