The Dorsey Machine Company *et al. v.* McCaffrey.

Filed Dec. 13, 1894.

---

No. 15,777.

THE DORSEY MACHINE COMPANY ET AL. *v.* McCAFFREY.

CORPORATION.—*Conspiracy.—Fraudulent Increase of Stock.—Damages.*
—A corporation may become a party to or participator in a conspira-
cy to increase its capital stock for a fraudulent purpose, and will be
liable for damages resulting therefrom.

SAME.—*Stockholders.—All Need not Participate in Fraud in Order to
Bind Corporation.*—It is not essential to bind the corporation for
wrongs resulting from a fraudulent increase of its capital stock that
all of its stockholders should participate in the act, but it is suffi-
cient if enough engage therein to bring about the increase under the
requirements of the law.

SAME.—*Purchase of Stock.—Fraudulent Representations by President as
to Value.—Damages.—Assignment.—Parties.*—Where one is induced
to purchase stock in a corporation by the false and fraudulent rep-
resentations of its president as to the value of the stock and the
solvency of the corporation, and the corporation receives and uses
the proceeds of the sale, the latter is liable for the damages thereby
sustained, without reference to the manner in which the stock was
issued, and a complaint to recover such damages will lie, although
the corporation is insolvent and is being wound up under a statu-
tory assignment, and in such case the assignee is a proper but not
a necessary party.

STATUTE OF LIMITATIONS.—*Fraud.—Ignorance of.*—In suits in equity,
where a party has been injured by the fraud of another, and such
fraud is concealed, or is of such a character as to conceal itself,
whereby the injured party remains in ignorance of it without fault
or want of diligence, the statute of limitations does not begin to run

VOL. 139—35

until the fraud is discovered, even though there be no affirmative acts of concealment.

SAME.— *When Question of Raised by Demurrer and When Not.*—Where a complaint shows upon its face that the action was commenced after the·time limited, the question can be raised on demurrer, provided the statute is absolute, having no exceptions; if there be exceptions, however, and the complaint does not show that the action is not within any of them, a demurrer will not raise the question.

SAME.— *Corporation.—Sale of Stock.—Fraud.—Affirmative Concealment.* —Where the president of a corporation, acting as such to induce an infant, inexperienced in business affairs, to purchase the corporation stock, and to mislead such infant as to the facts, falsely and fraudulently represents that the corporation is solvent and prosperous, but that the purchaser must not expect any dividends for three years, as it was intended to increase the business of the corporation, and the purchaser relies upon such representations and makes no investigation, there is such concealment as postpones the running of the statute of limitations until the discovery of the fraud.

TRIAL.—*Postponement After Commencement from One Term to Next.— Sick Juror.*—Under section 1379, R. S. 1881 (Burns R. S. 1894, section 1442), the trial court has power, where a trial requiring many days is commenced on the next to the last day of a term, and a juror becomes ill and unable to then serve, to postpone the further hearing to a day in the next term, and to order the jury and witnesses to then attend and conclude the trial.

STRUCK JURY.—*Party Present but Refusing to Strike.— Withdrawal of Demand.—Clerk May Strike.—Motion to Quash Venire.*—Where a party demands a struck jury and attends at the time fixed for striking the same, and is furnished by the clerk with a list of the names selected which he considers, and then announces that he withdraws his demand for a struck jury and refuses to proceed further, the clerk is authorized to proceed as in the case of an absent party, and a motion by the party demanding such struck jury to quash the venire should be overruled.

From the Wayne Circuit Court.

*C. H. Burchenal* and *J. L. Rupe,* for appellants.
*M. E. Forkner* and *T. J. Study,* for appellee.

DAILEY, J.—The facts constituting the plaintiff's cause of action, as shown by the complaint, stated briefly, are substantially as follows:

The Dorsey Machine Company was organized on Oc-

tober 14, 1879, with a capital stock of $60,000, for the purpose of manufacturing and selling reapers and other agricultural implements, and, on October 17, 1881, the stock of the company was increased to $125,000, up to which time the business of the company had not been prosperous, successful or remunerative; but, on the contrary, the company had sustained serious loss, and was, at that time, actually insolvent and unable to pay its debts, and was pressed to the last extremity for money to keep the company going, all of which the appellants, except Warren, who were then the directors and officers of the company, and large holders of the original stock thereof, then well knew. And knowing the insolvent condition of said company, and its pressing need of money to pay its debts and keep its business from stopping, and recognizing the utter worthlessness of the stock, the defendants Morris, Liebhardt, the Fergusons, and Kinsey and others, who were directors of the company, together with others who were its stockholders, conspired and confederated together for the purpose of fraudulently increasing the stock of the company, and selling such increase outside of the company for the purpose of paying its debts and keeping it going in apparent prosperity until they could sell and dispose of their own stock, and thereby cheat and defraud those who might purchase such new and original stock, by making certain false representations as to the property, condition and business of the company, the value of its stock and the nature and extent of its liabilities.

About January 1, 1882, the plaintiff was unmarried, under the age of twenty-one years, inexperienced and ignorant of business, and under guardianship of one Millikin, who had in his hands, as such, a large amount of money which would come to plaintiff at her majority, on November 7, 1882. Said facts were known to de-

fendant Morris, who, for himself and his coconspirators, sought out the plaintiff and importuned her to purchase one hundred shares of said increased stock for the sum of $5,000; and to induce her to do so, he, for himself and codefendants and coconspirators, and in pursuance of said conspiracy, falsely and fraudulently represented to her that said company was solvent, and doing a prosperous business; that it was not increasing its stock to pay debts or because it needed money, but to enlarge its business; that the stock represented $1.37 to every dollar of the face value of said stock of solvent assets, and its stock was worth $1.37 to the dollar; that the company had no debts, and had a large surplus, to wit, $47,000 of solvent assets; that all of said representations were false, and known to be by said Morris and the other defendants.   Each one of the facts so represented is specifically negatived, and it is alleged that the company was insolvent, and the stock worthless; that at the time of making said representations, said Morris was well known to her, and reputed to be a person of large property, and great business capacity and integrity, wherefore she confided in him, and believed in, and relied on his representations as being true, and purchased $5,000 of the stock, for which she gave her note, and afterwards paid the same; that no dividends have ever been paid on the stock, and it is worthless; that the company on December 20, 1888, being insolvent executed an assignment of all its property to the defendant Warren, for the benefit of its creditors, and the assets in his hands are not sufficient to pay the debts of the company, or any part of its liability to its stockholders.   The complaint then goes on to allege certain things done and omitted by the defendants which are said to have prevented the plaintiff from discovering her cause of action, and by which it was concealed from

her until within the last year, and concludes by claiming damages in the sum of $8,000. The defendants severally demurred to the complaint on the ground that it did not state facts sufficient; which demurrers were severally overruled, and defendants severally excepted. The defendants answered in two paragraphs:

1st. General denial.

2d. The statute of limitations.

The plaintiff filed a reply to the second paragraph of the answer, the first being a general denial; and the second setting up certain matters by which it was alleged that the plaintiff's cause of action was concealed from her until within the period of six years before the commencement of the action. The defendants demurred to the second paragraph of the reply; which was overruled and they excepted. The cause was tried by a struck jury, who returned a verdict for the plaintiff in the sum of $7,568.90, and also returned answers to certain interrogatories propounded to them. Separate motions for a new trial were filed by the defendants, all of which were overruled; and on the 29th day of March the court rendered judgment against the defendants, except Warren, from which the defendants severally appeal. All the defendants unite in an assignment of errors, four in number. Several of the defendants also make separate specifications of error, but as these cover substantially the same grounds, for convenience we will consider them together. Among the alleged errors discussed by the learned counsel for the appellant, is the ruling upon the demurrer to the complaint. They say the demurrer of the Dorsey Machine Company to the complaint should have been sustained. The fraud, if any, was committed by individuals engaged in it, and not by the corporation. The corporation is made up of all the stockholders, all of whom are interested in proportion to the

amount of their stock. It is not alleged that all of the stockholders engaged in the conspiracy, or participated in the alleged fraud, but only that the makers and some others did so. The complaint shows that at the time the conspiracy set forth therein was entered into, the defendants Morris, Liebhardt, Oliver and Linville Ferguson, Kinsey, Gresh and Gaines were the directors of said company, and that the defendants in the action, which includes said company, combined, confederated and conspired together, and, with others, whose names are not known to the plaintiff, but who then held and owned large amounts of the original stock of said company, for the purpose, and with the intent to fraudulently increase the capital stock of said company to $125,000, for the fraudulent purpose of cheating and defrauding those who might purchase stock. And that for said purpose the stock of said company was, on or about the 17th day of October, 1881, increased $65,000, making its capital stock $125,000. The complaint also shows that said Morris, in January, 1882, was the president of the company, and while then acting as such, by means of the false and fraudulent representations he then made to the appellee, induced her to purchase of said company one hundred shares of its capital stock, for which the appellee executed to the company her note for $5,000, which she paid to it on the 11th day of November, 1882. In our opinion the complaint shows a good cause of action against the company. It is the law that a corporation may become a party to, or participator in a conspiracy, such as is charged in the complaint, and may be liable for the damages resulting therefrom.

In *Buffalo, etc., Oil Co.* v. *Standard Oil Co.*, 106 N. Y. (Appeals) 669, the court say: "We entertain no doubt that an action against a corporation may be maintained to recover damages caused by conspiracy . * * *.

If actions may be maintained against corporations for malicious prosecution, libel, assault and battery and other torts, we can perceive no reason for holding that actions may not be maintained against them for conspiracy. It is well settled by the authorities cited, that the malice and wicked intent needful to sustain such actions may be imputed to corporations.''

In *Cragie* v. *Hadley*, 99 N. Y. App. 131 (134), it was said that ''a corporation may be in a legal sense guilty of a fraud. As a merely legal entity it can have no will, and can not act at all, but in its relations to the public it is represented by its officers and agents, and their fraud in the course of the corporate dealings, is in law the fraud of the corporation.''

The proposition is sustained by the authorities that a corporation may be charged with any wrong that may be committed through an agent, and may be held liable for damages caused by his deceit or false representations. In such case the doctrine of *ultra vires* has no application. Morawetz Priv. Corp., paragraphs 725, 726, 727; *National Bank* v. *Graham*, 100 U. S. 699, 702; *Fiskhill Savings Inst.* v. *Nat'l Bank, etc.*, 80 N. Y. 162; *American Exp. Co.* v. *Patterson*, 73 Ind. 430; 2 Wait's Act. and Def., 337.

Increasing the stock of a corporation is its act, and like every other act by a corporation, can only be done through the instrumentality of some person acting for or in its behalf; and when the stockholders of the appellate company increased its capital stock, they did so as the agents of and for the company, and the act was that of the company. It is true the complaint does not show that all the stockholders of the company participated in increasing its stock, or in the fraud and conspiracy charged therein, but it does show that a sufficient number of them so engaged to effect the increase under the

requirements of the law, and when this was done it became the act of the corporation, and rendered it liable for the consequences of such wrongful act. The damage which the appellee sustained by reason of the alleged false and fraudulent representations made by said Morris, as a stockholder and president of the company, to her, and by which she was induced to invest in shares of the stock, is the foundation, or gist, of the action.

The conspiracy is charged in the complaint for the purpose of holding certain of the appellants liable for the damage the appellee has sustained by reason of the false and fraudulent representations claimed to have been made to her, by which she was induced to purchase said shares of stock, and in the making of which they did not actually participate. But to hold such company liable for the direct and proximate consequences of said representations made by its president and chief officer and agent, for and on behalf of the company while transacting its business, it is not necessary to either charge or prove a conspiracy, because the foundation of the action is the damage done the plaintiff by the violation of her rights, and not the conspiracy. The fact of conspiracy is only matter of aggravation. *Hutchins* v. *Hutchins*, 7 Hill (N. Y.), 104; *Kimball* v. *Harman*, 34 Md. 407; Cooley Torts, 124, 126.

This is clearly sound doctrine in a case like this, where the company received the money, the fruits of the alleged fraud, and appropriated the same to its use. It is also contended that the complaint is not good as to said company for the reason that the complaint shows the company is insolvent, and is being wound up under a statutory assignment, and this would preclude a recovery, even if, under the facts stated, the company would have been liable had not insolvency intervened. We are unable to find any authorities in support of this propo-

sition, and think they do not exist.   They go no further than to lay down the familiar rule that where a share-holder has been induced to subscribe for stock through the fraud of the company, he can not annul the contract of subscription and recover back what he has paid into it, and thereby free himself from liability, if others, in the meantime, have acted upon the faith of such sub-scription; under such circumstances as between them and the stockholders, responsibility for the fraud attaches to him.

The complaint alleges the insolvency of the company but it does not state when its unpaid liabilities were con-tracted, nor can it be inferred from anything contained therein that said liabilities, or any part thereof, were contracted upon the faith of the appellee's subscription. It is needless to say the present suit was not brought by the appellee to annul her contract of subscription, but to recover damages she has sustained by reason of the al-leged fraud.   The relief sought and obtained in this case is entirely different from that given the shareholder in an action by him, if successful to annul his contract of subscription.   In the latter action the shareholder re-covers back all he has paid into the company, while in the present case the appellee could only recover the amount of damage she has sustained by reason of the fraud so perpetrated, which might be much less than the amount she paid for the stock, or it might be more.

It is lastly urged against the sufficiency of the com-plaint as to the corporation that it shows the appellee's cause of action is barred by the statute of limitations. In suits in equity where relief is sought on the ground of fraud, the authorities are without conflict in support of the doctrine that where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute will not

bar relief, provided suit is brought within the proper time after the discovery of the fraud. Also, in suits of equity the decided weight of authority is in favor of the proposition that where a party has been injured by the fraud of another, and such fraud is concealed, or is of such character as to conceal itself, whereby the injured party remains in ignorance of it without any fault or want of diligence on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the person committing the fraud to conceal it from the knowledge of the other party. *Wear* v. *Skinner*, 46 Md. 257 (265); *Booth* v. *Warrington*, 1 Bro. P. C. 445; *Fisher* v. *Tuller*, 122 Ind. 31; *South Sea Co.* v. *Wymondsell*, 3 P. Wms. 143; *Hovendon* v. *Annesley*, 2 Schoales and Lef. 634; *Stearns* v. *Page*, 48 U. S. (7 How.), 818; *Moore* v. *Greene*, 60 U. S. (19 How.) 69; *Sherwood* v. *Sutton*, 5 Mason, 143; *Snodgrass* v. *Branch Bank, etc.*, 25 Ala. 161.

It is claimed there could be no exception to the running of the statute as to the corporation. The rule is, that where the limitation in a certain case is absolute, and there are no exceptions to the running of the statute, and the complaint shows, upon its face, that the action was commenced after the time limited, the question can be raised on demurrer. But where there are exceptions to the period limited by statute, in any case, and the complaint shows, upon its face, that the action was not brought within the time limited, still the question can not be raised by demurrer to the complaint, unless it also shows that the particular action is not within any of the exceptions to the statute.

The complaint in the case under consideration does not show this. The law in this State is adverse to the contention of the appellant corporation. *Hanna, Admr.,* v. *Jeffersonville R. R. Co.*, 32 Ind. 113; *Potter* v. *Smith,*

36 Ind. 231; *Harlen* v. *Watson*, 63 Ind. 143; *Baugh* v. *Boles*, 66 Ind. 376; *Kent* v. *Parks*, 67 Ind. 53; *Cravens* v. *Duncan*, 55 Ind. 347.

At the time the plaintiff's cause of action accrued, she was an infant, and might also have labored under some other supervening disability that arrested the progress of the statute and exempted her from its effect, or she might have rested under divers other legal incapacities, for aught that appears in the complaint. The averments do not show that none of the exceptions existed which prevent the bar of the statute, and the question whether the cause of action is barred can not be raised by demurrer to the complaint.

It is also claimed by the appellant Dayton H. Warren, assignee of the company, that his demurrer to the complaint should have been sustained, because it is not alleged that he was a party to the fraud. But it is alleged that he is its assignee, and, as such, he must hold the assets that might be affected by any judgment rendered against the company for the payment of its debts and liabilities. In our judgment, the assignee was not a necessary party to the action, but we think he is a proper one.

It is further argued by counsel for the assignee, in support of his demurrer to the complaint, that even if the appellee had a cause of action against the company for fraud, the appellee had no right as against the creditors of the corporation to be compensated out of the assets. This position is based upon the assumption that the unpaid debts and liabilities of the company were contracted after and upon the faith of the appellee's subscription.

This takes too much for granted. There is nothing in the complaint showing the amount of the indebtedness, or when it was contracted, whether before or after

the increase of the stock, or whether before or after the appellee subscribed for or bought her stock. The inference is just as strong that this indebtedness was contracted prior to the increase of the stock and the purchase by the appellee, as it is that it was contracted after these events. We think this question of little importance.

If the plaintiff had a cause of action, she had a right to have her claim for damages fixed and determined against the company and all others liable, which could only be done by instituting an action for that purpose, and no question arises now as to her right to share with the creditors of the company in the distribution of its assets. This question can only be presented when the proper proceedings are instituted therefor.

The learned counsel of appellants concede that, "as to the other defendants, the complaint probably states facts sufficient to show a cause of action existing on the 7th day of November, 1882," but insist that the statute of limitations shields them and defeats the remedy. What has been heretofore said in considering the demurrers of the company and the assignee, Warren, applies with equal force to these defendants.

In the second paragraph of the reply to the second paragraph of the answer, the specific acts and facts constituting the concealment are specifically stated, from which it appears that at the time appellee purchased said stock as alleged in the complaint, the said defendant Morris, for himself and for and on behalf of his codefendants and coconspirators, except the defendant Warren, for the fraudulent, false and wrongful purpose of concealing from and preventing plaintiff from discovering her said cause of action and the falsity of said representations so made to her by said Morris, and the insolvent condition of said company, and the condition of

its business affairs, stated to the plaintiff that she need not expect any dividends on her stock for three years; that they intended to increase the business of said company, and the latter would not pay any dividends for that period. All of which statements the plaintiff says she believed to be true, and relied upon them as being true, for which reason she says she did not make any application to said company for any dividends, or make any investigation as to the financial condition of said company during said period.

We think this statement was well calculated to lull appellee into repose, and cause her to make no demand upon or application to the company for dividends during that time. Morris knew she was a minor, inexperienced in business and could not actively aid in the management of its affairs. Its direct tendency was to effectually obstruct and conceal the only source and channel through which she could receive knowledge of the company's real condition. This is especially so when it is remembered that Morris represented the company as possessed of a large surplus capital and highly prosperous. The concealment need not be subsequent to the accruing of the cause of action concealed, but may be coincident with it.

In *Boyd* v. *Boyd*, 27 Ind. 429, after deciding the point that the concealment contemplated by the statute must be something more than mere silence, and that it must be an arrangement or contrivance to prevent subsequent discovery, and must be of an affirmative character, the court say: "But it does not occur to us that it needs to be concocted after the accruing of the cause of action, provided it operates afterwards as a means of concealment, and was so intended. In other language, the defendant must not, at any time, do anything to prevent the plaintiff from ascertaining, subsequently to the trans-

action out of which the right of action arises, the facts upon which that right depends, either by affirmatively hiding the truth, enhancing the natural difficulty of discovering it, or by any device avoiding inquiry which would result in discovery." *Bartalott* v. *International Bank,* 14 Ill. App. 158; *Way* v. *Cutting,* 20 N. H. 187; *Quinby* v. *Blackey,* 63 N. H. 77; *Bailey* v. *Glover,* 21 Wall. (U. S.) 342; 2 Greenl. on Ev., par. 448.

In our opinion a party is not bound to presume fraud unless he has notice of facts which would put a reasonable man on inquiry. When, therefore, he has notice of no such facts, he can not be charged with a want of diligence in not discovering the fraud.

In 1 Yaple's Code Prac. & Prec., 431, the author says: "Where it is provided that the statute of limitations does not begin to run until after discovery, it would seem to be a sufficient averment to bring the case within the saving, to state in the pleading that the party did not discover it until a certain time within the limited period."

The replies of concealment to the statute of limitations in the cases of *Arnold* v. *Scott,* 2 Mo. 13; *First Mass. Turnpike Corp.* v. *Field,* 3 Mass. 201, and *Homer* v. *Fish,* 1 Pick. 435, did not contain any of the averments insisted upon by counsel for the appellant, and yet were held sufficient upon demurrer.

The record shows that the trial of the cause commenced on the 15th day of January, 1890, being the last day but one of the November term of the Wayne Circuit Court, when one of the jurors trying the cause being then sick and unable to attend court and go on with the trial, and would not be for several days, and the parties being unwilling to proceed without him, and it appearing that if the juror was present and able to sit, the trial could not be concluded at that term, the court ordered the further hearing of the cause to be adjourned and con-

tinued until February 10, 1890, the seventh juridical day of the next term thereof and directed the jury to be present at the time fixed, to proceed with the trial. On that day the jury appeared and the trial was resumed. On the 8th day of March they returned their verdict.

It is claimed by the counsel for the defendants that the court had no power or authority to continue the trial of said cause from the 31st of January, 1890, to the 10th day of February, as was done, and to order the attendance of the jury and witnesses at that time, to then conclude the trial thereof.

We think it clear that this action of the court was not prematurely taken and was within the spirit of section 1379, R. S. 1881, Burns R. S. 1894, section 1442. This statute is a remedial one, intended to prevent mistrials, and should be liberally construed to that end. In relation to the striking of the jury that tried the cause, and the motion of the defendants to quash the *venire,* the record shows this state of facts: On the 23d of December, 1889, the defendants filed with the clerk their demand for a struck jury to try the cause. The clerk fixed the time of striking the same at 10 o'clock A. M. of December 28, 1889, and so notified the parties. At the time fixed the parties appeared at the clerk's office for that purpose, and thereupon the clerk handed to the attorneys of the defendants a list of forty names on a slip of paper, from which a jury was to be selected; and a like list, on a slip, to the attorneys of the plaintiff. The list handed to the attorneys of the defendants, they and two of the defendants in person took and carefully considered and canvassed the names thereon for about an hour and then informed the clerk and the attorneys of the plaintiff that they would not demand a struck jury and would withdraw their demand therefor. Thereupon the plaintiff's attorneys demanded that the clerk proceed

with the striking of the jury as the law requires in such cases, which he and the attorneys of the plaintiff proceeded to do, the clerk first striking out one of the names on the list, and the plaintiff's attorneys then striking out another; and they proceeded and continued to thus alternately strike out one of said names each, until said clerk had stricken out twelve of said names, and the attorneys of the plaintiff a like number thereof.   Afterwards, the defendants objected to the summoning of the jury so struck, and asked the clerk not to issue a *venire* for them, and that the regular panel be recalled to try the cause.

In support of their objection they filed certain affidavits, and the plaintiff filed an affidavit in opposition thereto.   The court overruled the objection, and directed the clerk to issue a *venire* for said jury.   After said jury had been summoned, and before they were impaneled and sworn, the defendants filed their motion to quash the *venire* and their challenge to the array of said panel, supported by certain affidavits, and the plaintiff presented an affidavit in opposition thereto.   The court overruled the motion and challenge.   It is shown by the record that several days prior to the time the defendants demanded a struck jury, and during the November term of said court, the defendants' attorneys stated in open court that they would not try said cause by the regular jury, then in attendance, but would demand a struck jury to try the cause, and that on the 20th of December, 1889, the judge of said court notified one of the defendants' attorneys that there was no cause to be tried by a jury at that term, unless they desired to so try this case, and was informed by said attorney that they did not desire to try it by the regular panel, but would demand a struck jury, and thereupon said regular jury was on said day discharged for the term.   We think

there was no error in these proceedings of which the appellants can complain. The statute must receive a reasonable construction, and when either party is present at the time and place fixed to strike the jury, and refuses to act, he is absent within the meaning of the statute, and the clerk should strike out names for him. It is true the machinery of the law is put in motion by the party making the demand for a struck jury, but when it is once set in motion, and the clerk is caused to act officially in the matter, it does not lie with the party invoking its aid to arrest the force so created. And when in this case the parties appeared in the clerk's office at the time fixed for striking the jury, and the clerk selected the names of forty persons from which the jury was to be struck, and gave to each of the parties a list of such names, the process of striking the jury had actually commenced; the clerk was in the performance of an official duty as a public officer, and it was not then within the power of the defendants to stop or impede the proceeding by withdrawing their demand for a struck jury, or by remaining present, protesting and refusing to act. Some objections are made by the learned counsel for the appellants to a portion of the instructions given to the jury. The objections offered are quite numerous, but we think that when the instructions are considered together, as they should be, they fully and correctly state the law applicable to the case. The appellants also tendered certain instructions which were refused by the court, but every point in the case seems to be fully covered by the numerous and carefully framed instructions, which the court gave the jury, and it was not necessary or proper to indulge in repetitions.

The judgment of the lower court ought to be, and it is affirmed.

Filed Sept. 25, 1894; petition for a rehearing overruled Dec. 19, 1894.