### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## EASTERN DIVISION

KNOXVILLE, SEPTEMBER TERM, 1917.

JOHN BRUMLEY *et al. v.* CHATTANOOGA SPEEDWAY & MOTORDROME Co. *et al.*

*(Knoxville.* September Term, 1917.)

1. **CONSPIRACY.** "Civil conspiracy."

A "civil conspiracy" is a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means. (*Post, p.* 538.)

Case cited and approved: McKee v. Hughes, 133 Tenn., 455.

2. **CONSPIRACY.** " Conspiracy to defraud." Nature of understanding. Intent.

"Conspiracy to defraud" is a subdivision of civil conspiracy wherein each has the intent to defraud and understands that the other has that purpose, but no formal agreement is necessary, nor need each conspirator have knowledge of the details. (*Post, p.* 538.)

Cases cited and approved: Ballantine v. Cummings, 220 Pa., 621; United States v. Frisbie (C. C.), 28 Fed., 808; Patnode v. Westenhaver, 114 Wis., 460.

(534) [138 Tenn.

Brumley v. Speedway & Motordrome Co.

3. **CORPORATIONS.**  Conspiracy to defraud.   Acts of agents.
Ultra vires acts.

A corporation may be liable for conspiracy to defraud by acts
of its agents, and although the transaction is outside the scope
of its corporate powers.   (*Post, pp.* 538, 539.)

Cases cited and approved: West Virginia, etc., Co. v. Standard
Oil Co., 50 W. Va., 611; Standard Oil Co. v. State, 117 Tenn., 618;
State v. Standard Oil Co., 120 Tenn., 86; Zinc Carbonate Co. v.
Shullsburg, etc., Bank, 103 Wis., 125; Dorsey Machine Co. v.
McCaffrey, 139 Ind., 545.

4. **CONSPIRACY.**   Liability of Conspirators.

Conspirators are jointly and severally liable, and it makes no
difference how the booty is distributed.   (*Post, pp.* 539, 540.)

Cases cited and approved:    Boston v. Simmons, 150 Mass., 461;
Zinc Carbonate Co. v. Shullsburg,  etc., Bank, 103 Wis., 125; Peo-
ple v. Tweed, 5 Hun. (N. Y.), 353; Fountain Springs Park Co.
v. Roberts, 92 Wis., 345.

5. **CONSPIRACY.**   To defraud.   Liability of agent.

An agent for a conspirator to defraud is liable for fraud although
he gains no benefit from it, where he would be liable if acting
for himself.   (*Post, pp.* 540, 541.)

Cases cited and approved: Carpenter v. Lee, 13 Tenn, 265; Lamm
v. Port Deposit, etc., Ass'n., 49 Md., 233;   Brown & Sons Lumber
Co. v. Sessler, 128 Tenn., 665.

6. **BILLS AND NOTES.**   Insane persons.   Holders  in  good
faith.

A purchaser or holder of a certificate of deposit, indorsed or un-
indorsed, is not a *bona fide* holder as against one lacking capa-
city of negotiate it, such as an imbecile, and the latter may dis-
affirm and recover the instrument from the holder.   (*Post, pp.*
541, 542.)

Case cited and approved:  Murray v. Thompson, 136 Tenn., 118.

FROM HAMILTON

Appeal from the Chancery Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— W. G. M. THOMAS, Special Chancellor.

SAM J. MCALLESTER & FINLEY, CAMPBELL & COFFEY, for appellants.

MURRAY & DRAPER, GARVIN & CANTRELL and J. WALTER PEAK, for Chattanooga Sash & Door Co., and W. B. Hughes.

WHITAKER & FOUST, for Chattanooga Speedway & Motordrome Co.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The bill of complaint was filed by two brothers, John and S. E. Brumley, against the Speedway & Motordrome Company (hereinafter called the Speedway Company), the Chattanooga Sash & Door Company, a body corporate, and W. B. Hughes, a managing officer of the last-named corporation, charging participation in a civil conspiracy with one Silvers to defraud complainants in the sale to them of shares of the capital stock of the Speedway Company which were worthless or about to become so.

The case is before this court on *certiorari* to the court of civil appeals, under petitions filed by the Sash

& Door Company, Hughes, and complainants. The Special Chancellor, W. G. M. Thomas, Esq., and the court of civil appeals have concurred in finding the facts of the existence of a conspiracy on the part of the Sash & Door Company and Hughes with Silvers, who was the active agency in making the sale to complainants; that John Brumley was an imbecile; and that there was a gross fraud perpetrated on both of the complainants to their injury. This concurrence makes a detailed recital of the facts by us unnecessary.

It appears that for the construction of the building of the Speedway Company, the Sash & Door Company had furnished materials, and the latter company was exercised as to realization on its claim. Along with several other creditors, in order to avert a greater loss, it accepted shares of stock in the Speedway Company in payment of one-half of its demand, the certificates being issued to Hughes, trustee, for his company, and Hughes became a member of the board of directors and vice-president of the Speedway Company.

Notwithstanding this settlement an indebtedness outstood against the company, considerable enough to send it staggering speedily to a fall, so disastrous that the stockholders stood to receive only a pittance on their shares. Before the crash came, however, the Speedway Company placed in the hands of Silvers for sale an additional block of stock, $3,500 face, and this was the stock sold to complainants, the Brumleys. Its sale tended to the advantage of the Sash & Door Company. The complainants declined to receive the small

dividend left for the shares, and tendered back the certificates in this suit.

A "civil conspiracy" may be defined to be a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means. *Mc-Kee* v. *Hughes,* 133 Tenn:, 455, 181 S. W., 930, L. R. A., 1916D, 391.

A subdivision of civil conspiracies are those concerted to defraud a third person.

A "conspiracy to defraud" on the part of two or more persons means a common purpose, supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and that each has the understanding that the other has that purpose. *Ballantine* v. *Cummings,* 220 Pa., 621, 70 Atl., 546, citing *United States* v. *Frisbie* (C. C.), 28 Fed., 808. The agreement need not be formal, the understanding may be a tacit one, and it is not essential that each conspirator have knowledge of the details of the conspiracy. *Patnode* v. *Westenhaver,* 114 Wis., 460, 90 N. W., 467.

As to the liabillity of the corporate defendant, the Sash & Door Company:

Whatever may have been the conception and holding in former times as to the liability of a body corporate for its participation in a civil conspiracy through the medium of its agents ,the doctrine is now firmly established that it may be so held. *West Virginia, etc., Co.,* v. *Standard Oil Co·,* 50 W. Va., 611, 40 S. E., 591,

56 L. R. A., 804, 88 Am. St. Rep., 895, quoted at length with approval in *Standard Oil Co.* v. *State*, 117 Tenn., 618, 665, 100 S. W., 705, 10 L. R. A. (N. S.), 1015; *State* v. *Standard Oil Co.*, 120 Tenn., 86, 110 S. W., 565.

A corporation may be liable for conspiracy to defraud even though the transaction by means of which the fraud was accomplished was outside the scope of its corporate powers. *Zinc Carbonate Co.*, v. *Shullsburg, etc., Bank,* 103 Wis., 125, 79 N. W., 229, 74 Am. St. Rep., 845; *Dorsey Machine Co.* v. *McCaffrey,* 139 Ind., 545, 38 N. E., 208, 47 Am. St. Rep., 290.

Both the special chancellor and the court of civil appeals held that the corporate defendant was liable, but the latter court was of opinion that the liability must be limited to the amount received by this defendant in payment of its demand, when the proceeds of the sales to complainants were distributed. The result in that court was a modification of the decree of the lower court, where full liability had been imposed. Our view is that the special chancellor was correct and the appellate court in error in this respect.

Since it is basic principle that each conspirator is responsible for everything done by his confederates which the execution of the common design makes probable as a consequence, the law applying no guage to ascertain relative activity in the production of that consequence, it follows that each is liable for all damages naturally flowing from any wrongful act of a coconspirator in carrying out such common design. *Boston* v. *Simmons,* 150 Mass., 461, 23 N. E., 210, 6 L. R. A.,

629, 15 Am. St. Rep., 230; 5 R. C. L., 1104. The rule is conformable to the principle that each joint tort-feasor is liable for the entire damage.

This is true despite any distribution that may have been made, by way of payments or otherwise, by the conspirators of the booty gathered as a result of their wrongdoing. *Zinc Carbonate Co.* v. *Shullsburg, etc., Bank, supra; People* v. *Tweed,* 5 Hun (N. Y.), 353; *Fountain Springs Park Co.* v. *Roberts,* 92 Wis., 345, 66 N. W., 399, 53 Am. St. Rep., 917. The law itself makes no apportionment, and it disregards any distribution made by the conspirators themselves, and refuses to consider same when urged as a shielding or mitigating equity.

As to the liability of the agent, Hughes, for the fraud:

The learned special chancellor committed error in not rendering judgment against Hughes, but the court of civil appeals on appeal correctly ruled the point.

If one acting as the agent or employee of another is guilty of fraud under circumstances which would make him responsible if acting for himself, he may not be relieved from liability by showing that he acted as agent for such another, even though no personal benefit accrues to him. *Carpenter* v. *Lee,* 5 Yerg. (13 Tenn.), 265; *Lamm* v. *Port Deposit, etc., Ass'n,* 49 Md., 233, 33 Am. St. Rep., 246; Labatt, Mas. & Serv. section 2589.

Indeed, liability rests primarily upon the agent as the immediate actor at fault, and even his principal's

liability is derivative from that primary source and dependent on whether or not the agent acted for the principal. *Brown & Sons Lumber Co.* v. *Sessler,* 128 Tenn., 665, 163 S. W., 812, Ann. Cas., 1915C, 103. There can be no sound distinction between torts of negligence and torts growing out of fraud and deceit in this regard. The case for liability on the part of the agent rather would seem to be stronger in the latter case, since ordinarily he consciously and wittingly does the wrongful act that deceives and defrauds.

The fact that the intent to defraud is also that of another entity or person as conspirator in the pursuit of a common plan manifestly ought not to absolve the agent. Both the corporate defendant and its agent, Hughes, will be adjudged to pay the liability sum.

A further question arises on the record. It appears that John Brumley, the imbecile, was induced to deliver to Silvers a certificate of deposit he held, the same being issued by the Bank of Commerce & Savings Company to him as payee; but the finding from the proof is that it was not in fact, but only apparently, indorsed by or with the authority of John Brumley when delivered.

This certificate of deposit went into the hands of and is held by the Sash & Door Company, pretendedly in part satisfaction of its demand against the Speedway & Motordrome Company.

Whether indorsed or unindorsed, the purchaser or holder of such an instrument is not deemed a *bona fide* holder as against one lacking capacity to negotiate

it, such as an imbecile, and the latter may disaffirm and recover the instrument from the holder. *Murray* v. *Thompson,* 136 Tenn., 118, 188 S. W., 578 L. R. A., 1917B, 1172, and authorities cited.

A decree will be entered in this court in accordance with these rulings, and the cause remanded to the chancery court for further and consistent proceedings. The costs of the appeal and those accrued below will be paid by the Sash & Door Company and by Hughes in equal portions.