**STEWART COACH INDUSTRIES, INC.
et al., Plaintiffs,**

v.

**Gaile D. MOORE et al., Defendants.**

**No. C–3–80–228.**

United States District Court,
S. D. Ohio, W. D.

April 13, 1981.

David Stutsman, Elkhart, Ind., for plaintiffs.

Ira Rubin, Dayton, Ohio, for defendant Lenz.

Gaile D. Moore, Dayton, Ohio, for defendant Moore.

DECISION AND ENTRY OVERRULING DEFENDANT LENZ'S MOTION SEEKING AN ORDER OF THE COURT DISMISSING THE COMPLAINT AS TO HIM UPON GROUNDS OF NO PERSONAL JURISDICTION; PLAINTIFFS GIVEN TWENTY DAYS FROM DATE OF RECEIPT OF NOTICE OF DECISION TO EFFECT SERVICE ON DEFENDANT LENZ; PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT AND FOR FRAUD DISMISSED DUE TO APPLICABLE STATUTE OF LIMITATIONS UPON DEFENDANT LENZ'S AND MOORE'S MOTION TO DISMISS UPON THAT GROUND; MOTION TO DISMISS BY MOORE AS TO CLAIM OF INDUCING BREACH OF CONTRACT OVERRULED; MOTION TO DISMISS BY LENZ AS TO CLAIM OF INDUCING BREACH OF CONTRACT TREATED AS MOTION FOR SUMMARY JUDGMENT UNDER F.R.C.P. 56(e); HEARING DATE SET ON SAID MOTION

RICE, District Judge.

The captioned cause is before the Court upon two motions, to wit:

(1) the motion of the Defendant Harry Lenz, seeking an Order of the Court: (i) dismissing the Complaint against him because he has not been properly served, because the Court lacks jurisdiction over his person, or because Plaintiffs' claims are barred by the statute of limitations; or (ii) dismissing the claims of the remaining individual (i. e. noncorporate) Plaintiff Stewart Gardner against Lenz for reason that the Complaint fails to state any claim on Gardner's behalf; and

(2) the motion of the Defendant Gaile Moore seeking an Order of the Court dismissing the Complaint against him, or dismissing the claims of Gardner against him, for the same reasons advanced by Lenz except that Moore does not contest the propriety of service or this Court's jurisdiction over his person.

I. THE COMPLAINT

Plaintiffs are Gardner and Stewart Coach Industries, Inc. (Coach). It is alleged in the Complaint that Plaintiffs entered into an agreement with Pyramid Group, Inc. (Pyramid), in November, 1969, whereby Pyramid agreed to purchase from Coach all issued shares of a corporate subsidiary of Coach for approximately $345,000, said purchase price payable by Pyramid to Coach in installments through November, 1978. Included as terms of the agreement, to the extent here pertinent, was a provision for an additional payment of approximately $41,000 by Coach's former subsidiary to Gardner after execution of the agreement, and a covenant on Pyramid's part not to effect any net distribution of the acquired subsidiary's assets except under limited circumstances.

It is further alleged in the Complaint that Pyramid has paid only approximately $30,-000 against the purchase price set forth in the agreement, and that the assets of Coach's former subsidiary have been distributed in breach of the agreement. It is said that the Defendants Lenz and Moore, as officers of Pyramid, directed and con-

trolled such "fraudulent disposition" of the subsidiary's assets; that the Defendants did so "willfully, knowingly, intentionally and fraudulently;" and that Pyramid's covenant in the agreement not to make such distribution was a "false and fraudulent misrepresentation" made by Lenz and Moore in order to induce Plaintiffs to enter into the agreement. Plaintiffs claim injury in loss of the amount of the purchase price still owing under the agreement, and demand actual and punitive damages totalling over $1,200,000.

## II. PROCEDURAL BACKGROUND

Plaintiffs commenced this action in the United States District Court for the Northern District of Indiana on November 26, 1979. Although some difficulties were encountered with respect to Moore, service of process from the Indiana federal court was eventually made on both Defendants in Dayton, Ohio.

Shortly after the Complaint was filed, Lenz moved to dismiss or quash service contending that extraterritorial service on a nonresident pursuant to Indiana's "long arm" statute was not proper under the Complaint, and not sufficient for personal jurisdiction, absent allegations that Lenz had some kind of contact with Indiana in a personal capacity. In response to Lenz's motion, Plaintiffs sought and obtained leave to amend the Complaint, by interlineation, to allege that the "Defendants personally and individually had contact with the State of Indiana ..." Accordingly Plaintiffs also asserted in memorandum that they would "prove in this cause that the contract between Plaintiffs and Pyramid Group, Inc. was entered into by virtue of negotiations which involved numberous contacts by the Defendants with Indiana, their trips into Indiana, an execution of the contract in Indiana and followed by their actual activities engaged in operating the corporation which is located in Indiana."

Lenz subsequently filed an affidavit stating that he "did not at any time enter the State of Indiana in connection with or in regard to the transaction with Plaintiffs," and further stating that his only connection with the agreement in question was his participation in the final negotiation and execution thereof, all taking place in Dayton, and all done in Lenz's representative capacity as President of Pyramid. Lenz also said that he resigned his position with Pyramid in September, 1971.

It does not appear that Plaintiffs further responded to Lenz's motion, or responded at all to a similar subsequent motion by Moore. No decision was entered on either motion by the Indiana federal court. Some four months after Lenz's affidavit was filed, Plaintiffs obtained an oral order, on oral motion, transferring their cause to this Court.

Immediately after the case was docketed in this Court, Lenz renewed his motion to dismiss based on improper service, lack of personal jurisdiction and additional contentions based upon the statute of limitations and the absence of any stated claim by Gardner. Subsequently, Moore renewed his motion to dismiss, herein, omitting the challenge to personal jurisdiction, and relying instead on the statute of limitations and Gardner's failure to state a claim. Although Plaintiffs obtained from this Court an extension of time to reply to Lenz's renewed motion, in order that they might obtain local counsel as required by S.D.Ohio R. 3.0, Plaintiffs' eventual reply was neither within that extended time nor submitted by local counsel. Plaintiffs have still made no reply to either of Moore's motions (i. e., the motion in Indiana District Court or herein, even though the latter motion has been pending over five months). Finally, although instructed to do so almost six months ago, Plaintiffs have not yet advised the Court regarding their selection of local counsel.

## III. PERSONAL JURISDICTION OVER THE DEFENDANTS

The Court considers that Moore has abandoned his challenge to the propriety of service and the exercise of jurisdiction over his person by his omission of those matters from his renewed motion to dismiss as filed

herein. In any event, were this Court to reach those questions, it would find no reason to doubt that service on Moore in Ohio, out of Indiana federal court, was authorized by the Indiana "long arm" statute, Ind.Trial R. 4.4(A)(2), and that the exercise of personal jurisdiction by virtue of such authorized service would not exceed constitutional limitations, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The allegations in the Complaint, as amended, are sufficient to support the exercise of extraterritorial jurisdiction under the Indiana statute and the Constitution, by virtue of the nature and substantiality of the Defendants' alleged contacts with Indiana. Moore has offered no evidence to suggest that said allegations are untrue as they affect his amenability to service of process and to personal jurisdiction by courts in Indiana.

■ The matter is much different with respect to Lenz. The Lenz affidavit directly controverts the allegations in the amended Complaint concerning his amenability to service in Ohio under the Indiana "long arm" statute. The affidavit sets forth facts, with particularity, which support the proposition that Lenz has never acted in a personal capacity in any manner which would cause him to be subjected to proper service of process under Indiana law, or which would allow the constitutional exercise of extraterritorial jurisdiction over his person or by any court in Indiana. Lenz has simply had no personal contact with Indiana, commercial, contractual, tortious, or otherwise. The fact that Lenz was an officer of a corporation which may have had commercial or tortious contacts with Indiana is not a sufficient predicate for "long arm" service upon or personal jurisdiction over Lenz. *Weller v. Cromwell Oil Company*, 504 F.2d 927, 929 (6th Cir. 1974).

Plaintiffs have not submitted opposing affidavits or other materials to challenge the factual assertions in the Lenz affidavit. Technically, only a motion to dismiss for failure to state a claim, pursuant to F.R. C.P. 12(b)(6), may be converted into a motion for summary judgment and decided upon consideration of matters outside the pleadings. However, where a motion to dismiss for improper service and lack of personal jurisdiction is filed, pursuant to F.R.C.P. 12(b)(2), (5), and said motion is supported by affidavit, it is well settled that "the non-moving party [herein, Plaintiffs] may not rest upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction." *Weller, supra*, at 930; *Garrett v. Ruth Originals Corp.*, 456 F.Supp. 376, 384 (S.D.Ohio 1978); *Oddi v. Mariner-Denver, Inc.*, 461 F.Supp. 306, 310 (S.D.Ind.1978).

Therefore, this Court finds in the present case that service on Lenz in Ohio was not proper under Indiana's "long arm" statute, and that the federal District Court for the Northern District of Indiana lacked personal jurisdiction over Lenz.

■ But this does not necessarily end the matter with respect to Lenz. Where a federal district court lacks personal jurisdiction over a defendant, it may transfer the case upon the plaintiff's motion, pursuant to 28 U.S.C. §§ 1404(a), and 1406(a), to a district court in another state which is capable of exercising personal jurisdiction over that defendant. *Goldlawr v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Taylor v. Love*, 415 F.2d 1118 (6th Cir. 1969), *cert. denied*, 397 U.S. 1023, 90 S.Ct. 1257, 25 L.Ed.2d 533 (1970); *Coats Co. v. Vulcan Equipment Co.*, 459 F.Supp. 654 (N.D.Ill. 1978). Although the record is not altogether clear in this regard, the Court suspects that such was Plaintiffs' purpose in effecting the transfer from the Indiana District Court in the present case.

■ While this Court does not understand that the act of transfer, *in and of itself*, might cure any defect in service or cause previously unperfected personal jurisdiction to attach, it does believe that such problems can be readily resolved *after transfer* by an Order directing that the defendant be properly served under the law

in the transferee forum (particularly where, as herein, it appears that the defendant is a resident of the transferee state, such that limitations on extraterritorial service and personal jurisdiction ·are not presented, *see* F.R.C.P. 4(f)). Indeed, it is often held that dismissal is not warranted for improper service and lack of personal jurisdiction where there is a substantial likelihood that further service can be made and personal jurisdiction might thereby be attained. The proper course under such circumstances is to quash the improper service and grant plaintiff a period of time within which to effect proper service. 5 Wright & Miller, *Federal Practice and Procedure*, §§ 1351, 1353–1354 (1969 & Supp. 1980).

For the forestated reasons, the Court finds that service of process on Lenz out of the Indiana District Court was improper, and that such improper service is insufficient for the exercise of jurisdiction over Lenz's person by this Court. However, the Court further finds that there is a substantial .likelihood that further proper service can be made on Lenz under F.R.C.P. 4(f), and that personal jurisdiction might thereby be attained. In other words, dismissal of the Complaint against Lenz under F.R.C.P. 12(b)(2), (5), is not warranted at this time.

Therefore, Lenz's motion seeking an Order of the Court *dismissing* the Complaint against him, for reason that he has not been properly served and because the Court lacks jurisdiction over his person, is deemed at present to be not well taken, and same is overruled. Plaintiffs are given twenty days from date of receipt of notice of this decision to effect proper service upon Lenz.

In addressing the remaining points raised by Lenz's motion, in the balance of this decision, the Court assumes that proper service of process has been made upon Lenz and that the exercise of jurisdiction over Lenz's person is, therefore, proper.

## IV. THE STATUTE OF LIMITATIONS

### A. Contract

The Agreement at the center of this controversy (i. e., the agreement for the sale of Coach's subsidiary to Pyramid) was between Plaintiffs and Pyramid. Although it is alleged that Pyramid breached that agreement, Pyramid is not a Defendant, herein. Rather, Plaintiffs seek to prove personal liability only against Lenz and Moore for their part in inducing Plaintiffs to enter into the agreement with Pyramid, and their part in causing Pyramid to breach the agreement by distributing assets of the acquired subsidiary.

The agreement was executed approximately ten years before this action was commenced. It further appears that Coach's subsidiary was an Indiana corporation and that, at least in theory, the distribution of the subsidiary's assets therefore took place in Indiana.

On these facts, Plaintiffs say that the Court must find that the Indiana statute of limitations respecting actions on written contracts, Ind.Code § 34–1–2–2 (which provides 10 and 20 year limitations in different circumstances), is controlling, and that, the Court must, therefore, further find that Plaintiffs' claims are not time-barred.

 The Court disagrees. Construed most favorably to Plaintiffs, the Court does not understand how the amended Complaint might be read to state any claim *on a written contract* against either Defendant. Again, the parties to the agreement in question were Plaintiffs *and Pyramid*. Although Lenz and Moore signed the agreement, they did so *explicitly* as officers of Pyramid. It is hornbook law that officers of a corporation assume no personal obligation on an instrument which they sign *in the clear* as the corporation's agents. A corporate officer cannot be held liable on the corporation's written contract if, as herein, it is executed for the corporation "by" that officer. *See generally*, 19 Am. Jur.2d *Corporations* §§ 1341–1346; 19 C.J.S. *Corporations* §§ 837–840; 12 O.Jur.3d *Business Relationships* § 462.

This is not to say that Lenz and Moore, as corporate officers, were incapable of incur-

ring personal liability to Plaintiffs for losses with respect to the agreement. Rather, it is only concluded that Plaintiffs action against Lenz and Moore cannot be considered to be based *on that agreement* alone for purposes of availing Plaintiffs of the extended period provided by Indiana's statute (or any state's statute) limiting the time within which actions *on a written contract* may be commenced.

Therefore, that portion of Plaintiffs' Complaint sounding in breach of contract is dismissed, upon motion, due to its having been filed beyond the period fixed by the applicable statute of limitations.

### B. Fraud

█ The plain meaning of the language employed in the Complaint describes Plaintiffs' claims against Lenz and Moore in terms of fraud, misrepresentation, and falsehood. Such are the kind of claims which may be properly asserted against a corporate officer, in his personal capacity, by a creditor of the corporation or other third party who has sustained a loss on the corporation's obligations because of that officer's conduct. *See, e. g., Centennial Insurance Co. v. Vic Tanny International*, 46 Ohio App.2d 137, 346 N.E.2d 330, 334 (Lucas Cty. 1975).

█ However, actions on such claims uniformly sound in tort, and are not governed by statutory contract limitations. To the extent the claims, herein, are based on fraud, the longest period provided by any potentially applicable statute of limitations would appear to be that period applicable to actions for fraud under Indiana law, which is six years, Ind.Code § 34–1–2–1. The period provided under Ohio law, which Defendants say should be applied, is four years. O.R.C. § 2305.09. The Court need not decide whether Indiana or Ohio law applies to this question since Plaintiffs' cause for fraud arose more than six years ago and is, therefore, barred by either statute.

The Complaint indicates that Pyramid and Plaintiffs entered into the subject agreement in 1969. The alleged fraud which induced Plaintiffs to enter into the Agreement, to their detriment, was Defendants' personal promises or representations that Pyramid would abide by its covenant not to distribute the assets of the acquired subsidiary. Pyramid breached the covenant and Defendants' personal promises, therefore, were not performed.

█ Representations which are promissory in nature are not actionable *as fraud* simply because they are not performed, *unless* the promises are also false representations of present intention, i. e., if there is no intention to perform when the promises are made. *See generally*, 37 Am.Jur. 26 *Fraud and Deceit* §§ 57–72. (The Court assumes, for Plaintiffs' benefit, that Ohio law is controlling here, since it appears that Indiana rejects the notion that false representations of intent to perform are actionable *as fraud* under any circumstances. *Sachs v. Blewett*, 206 Ind. 151, 185 N.E. 856 (1933)). The Complaint indicates that Defendants' promissory representations were of such character (i. e., no intention to perform when promises were made). But in an action for fraud upon promissory representations, the fraud must be considered to have occurred not at the time when the promises are proven to have been false, but at the time when the false representations of intent to perform are made and acted upon. Since Plaintiffs claim that the false representations were made when they executed the agreement in 1969, it is clear that Plaintiffs' action for fraud upon those representations is barred by both potentially applicable statutes of limitations.

█ For similar reasons, Plaintiffs' claims of fraud are not preserved or revived by designating Defendants' other alleged conduct, in effecting the distribution of the subsidiary's assets or in causing the breach of Pyramid's payment obligations, as "fraudulent," even though such conduct may have occurred within the statutory pe-

riod of limitations for action in fraud. Defendants' acts, subsequent to Plaintiffs' entry into the agreement, cannot be considered fraudulent conduct *upon which Plaintiffs could have relied in entering into the agreement.* The only actions by the Defendants, as alleged in the amended Complaint, upon which Plaintiffs can be said to have relied, were the representations made at the time the agreement was executed. There is no indication in the Complaint that *Plaintiffs* might have done anything to their detriment, or that *Plaintiffs* might have failed to do something to their advantage, in reliance on any conduct by the Defendants *after the agreement was executed.* No matter how detrimental to Plaintiffs' interests, the breach of Pyramid's covenant and the nonfulfillment of Defendants' alleged promissory misrepresentations, after execution of the agreement, were not matters which induced Plaintiffs to do, or omit to do anything which resulted in the injury of which they complain *in the Complaint.* Without the possibility of such injurious reliance by Plaintiffs, the alleged subsequent conduct by Defendants could not be fraud as a matter of law.

 It is true that statutes of limitations generally do not commence running against actions for fraud until the time at which the alleged fraud was or should have been "discovered." But whether explicitly provided by the limitations statute, *see, e. g.,* O.R.C. § 2305.09, or added thereto by judicial construction, *cf. Dorsey Machine Co. v. McCaffrey,* 139 Ind. 545, 38 N.E. 208 (1894), the extension of the statutory period because of delayed "discovery" of the fraud is considered to be an exception to the specific period stated in the statute. Thus, when a complaint affirmatively indicates that the alleged fraud occurred at a remote time, such that it would ordinarily be barred by the statute of limitations, it becomes the duty of the plaintiff who seeks to rely on the "discovery rule" to affirmatively and particularly plead the date of discovery,

as a material averment under F.R.C.P. 9(b), (f), or face dismissal of the complaint. *Kincheloe v. Farmer,* 214 F.2d 604 (7th Cir. 1954), *cert. denied,* 348 U.S. 920, 75 S.Ct. 306, 99 L.Ed. 721 (1955). Cf., *Peterson v. Teodosio,* 34 Ohio St.2d 161, 297 N.E.2d 113 (1973) (similar Ohio civil rules); *Dayco Corporation v. Goodyear Tire & Rubber Co.,* 523 F.2d 389 (6th Cir. 1975) (fraudulent concealment of cause of action).

The Complaint herein affirmatively indicates that the only fraud which Defendants might have committed (i. e., promissory misrepresentations) occurred at the time of the execution of the agreement in 1969, and, therefore, an action thereon in 1979 would ordinarily be barred by either potentially applicable statute of limitations. Although it is conceivable that Plaintiffs may not have "discovered" the fraud until some later time (e. g., when they became aware that the subsidiary's assets had in fact been distributed), the Complaint does not indicate when such "discovery" might have taken place. Thus, reliance on the "discovery rule" by these Plaintiffs, in order to bring their action for fraud within the statute of limitations, would not be proper under the amended Complaint.

For the aforestated reasons, this Court finds that the Plaintiffs' claims of fraud, as asserted against Lenz and Moore in the amended Complaint, are barred by either potentially applicable statute of limitations.

## C. Inducing Breach of Contract

In essence, Plaintiffs allege in the amended Complaint that they have incurred a substantial loss by virtue of Pyramid's breach of the covenant contained in the agreement against distribution of the acquired subsidiary's assets and that such breach was personally caused, directed, and controlled by Lenz and Moore.

The memoranda of the parties are primarily devoted to the question whether the Defendants' alleged liability for Plaintiffs' loss should be characterized as being on a

written contract or for fraud. As indicated above, the contract theory is untenable, and the fraud theory is not viable due to the statute of limitations.

█ Nonetheless, upon examination of that part of the Complaint styled as Count II, deleting therefrom all allegations of fraud and primary breach of contract by Lenz and Moore, and construing the balance of the allegations therein most strongly in Plaintiffs' favor, this Court concludes that an actionable claim for relief is properly stated against Lenz and Moore, sounding in tort, based on alleged intentional interference with Plaintiffs' contractual interests by Defendants inducing Pyramid to breach the subject agreement. This cause of action is recognized in both Ohio, *Battista v. Lebanon Trotting Ass'n.*, 538 F.2d 111, 116 (6th Cir. 1976), and Indiana, *Sinclair Refining Co. v. Atkinson*, 290 F.2d 312, 318 (7th Cir. 1961), *aff'd. in part and rev'd in part on other grounds.* 370 U.S. 195, 238, 82 S.Ct. 1318, 1328, 8 L.Ed.2d 462, 440 (1962).

The problems presented by statutes of limitations under the alternative theories, discussed above, are not suggested by this construction of Plaintiffs' cause. The date on which Pyramid allegedly breached the covenant does not appear in the Complaint. In the absence of any contrary information (such as was presented with respect to the date of fraud, above), it must be assumed that Pyramid's breach, and the Defendants' alleged conduct in inducing such breach, did occur within the statutory period of limitations which might ultimately be deemed applicable. *See generally, Annot.*, 58 A.L. R.3d 1027 (discussing various limitations applicable to tort of interference). Although the Lenz affidavit does state that Lenz resigned his position with Pyramid in 1971, that fact alone does not preclude Lenz's liability under the Complaint for inducing Pyramid's breach, and accrual of a cause of action, thereon, after that date. Thus, the staleness of a cause of action against either Lenz or Moore for inducing Pyramid's breach is not suggested by the record.

Although this Court does find that the *amended complaint* sufficiently *states* claims against both Defendants for inducing breach of contract (for purposes of a motion to dismiss under F.R.C.P. 12(b)(6)), the Court must note that the *Lenz affidavit* suggests that Lenz might not be held liable on such claim.

In pertinent part, the Lenz affidavit states:

6. In connection with the transaction, upon which Plaintiffs have brought this action, Deponent was at all times acting solely in his capacity as President of Pyramid. Deponent did not and was not in a position to control Pyramid for the reason that the Board of Directors of Pyramid consisted of no less than eight persons during the entire time period covered by Plaintiffs' Complaint and Deponent did not own or control a majority of Pyramid's outstanding shares.

It is material to Plaintiffs' claims for inducing breach that each of the Defendants did personally (i. e., as a third party) influence Pyramid to breach its covenant in the agreement by distribution of the acquired subsidiary's assets. *Cf.* 45 Am. Jur.2d *Interference* § 54 at 327. In substance, the Lenz affidavit says that Lenz's only connection with the agreement was in his official capacity as Pyramid's agent and that, in any event, he was never in a position to influence Pyramid to breach the agreement. (The Court further notes that because Lenz's only connection with the transaction were *"at all times"* in his capacity as a Pyramid officer, he could have had no connection with Pyramid's alleged breach, in either a personal or official capacity, after he resigned his position in 1971.)

Plaintiffs have not controverted the matter raised by the Lenz affidavit with opposing submissions. Thus, if this case were in a proper posture, it is possible that Lenz's motion might be treated as one for summary judgment, and that summary judgment might be entered in Lenz's favor on Plain-

tiffs' claim against Lenz for inducing breach (leaving no viable claim against Lenz), based solely on the Lenz affidavit. F.R.C.P. 56(e).

■ However, the case is not in a proper posture for such proceeding. In examining the record, herein, the Court concludes that Plaintiffs have not been provided with sufficient notice that Lenz's motion, nominally filed under F.R.C.P. 12(b), might be converted and disposed of under F.R.C.P. 56. Although notice of such conversion is not an absolute requirement in each case, see, e. g., Dayco Corporation v. Goodyear Tire & Rubber Co., 523 F.2d 389, 393 (6th Cir. 1975), the Court further concludes that, in this case, Plaintiffs are "likely to be surprised by the proceedings" and that notice is, therefore, required. Id.

Therefore, the Court advises the parties that it intends to consider the Lenz affidavit in further addressing this aspect of Lenz's motion, and that it will treat said motion, in such part, as one for summary judgment. Plaintiffs are given leave to file opposing materials, in the form required by F.R.C.P. 56(e), twenty-four (24) hours prior to Thursday, April 30, 1981, at which time a hearing on Lenz's motion, treated as one for summary judgment, will be held.

## V. GARDNER'S CLAIM

The amended Complaint says that Gardner's claims against the Defendants are based on his alleged status as a stockholder in Coach and, consequently, as a "third party beneficiary" of the agreement between Coach and Pyramid.

■ It is well settled that shareholders have no personal interest in the property of the corporation, including the corporation's contract rights. 18 Am.Jur.2d Corporations § 486; 12 O.Jur.3d Business Relationships § 507. It follows that shareholders are not normally proper parties-plaintiff in an action to redress injury to the corporation's property, including actions for fraud, breach of contract, or interference with contract rights. See, e. g., United Copper Securities Co. v. Amalgamated Copper Co., 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 (1917); Scharmer v. Carrollton Mfg. Co., 525 F.2d 95 (6th Cir. 1975); Schaffer v. Universal Rundle Corp., 397 F.2d 893 (5th Cir. 1968); Brannon v. Kelley, 83 Ind.App. 250, 148 N.E. 157 (1925). See generally, 19 Am.Jur.2d Corporations § 526; 12 O.Jur.3d Business Relationships § 508.

■ However, despite the specific allegation in the Complaint regarding the basis for Gardner's claim, it is clear from the exhibit attached to the Complaint that Gardner was not merely a shareholder in Coach or "third party beneficiary" of the subject agreement. Gardner was among the contracting parties. He assumed numerous obligations in the transaction and was entitled to direct payment of a substantial sum under the agreement. It is not clear whether Gardner received such payment.

Since it appears that the covenant against distribution of the acquired subsidiary's assets by Pyramid may have been intended as a form of security for Pyramid's payment obligations to both Coach and Gardner, the Court concludes that Pyramid's breach of the covenant would constitute a direct injury to both Coach's and Gardner's contractual rights, actionable by either of them. Cf. Buschmann v. Professional Men's Ass'n., 405 F.2d 659 (7th Cir. 1969); 19 Am.Jur.2d Corporations § 527.

Therefore, the motion of the Defendants, seeking an order of the Court dismissing the Plaintiff Gardner's claim against them, is deemed by this Court to be not well taken and is overruled.

## VI. CONCLUSION

For the forestated reasons, the Court orders as follows:

(1) The motion of the Defendant Lenz in the part which seeks dismissal of the Complaint against him, for reason that he

has not been properly served and because the Court lacks jurisdiction over his person, is deemed at present to be not well taken and same is overruled. Plaintiffs are given twenty days from the date of receipt of notice of this decision to effect proper service of process upon Lenz;

(2) The motions of Defendants Lenz and Moore, in those parts which seek dismissal of claims against them sounding in fraud and breach of contract, for reason that such claims are barred by either potentially applicable statute of limitations, are well taken and sustained;

(3) The motions of the Defendants Lenz and Moore, in those parts which seek dismissal of all claims against them by the Plaintiff Stewart Gardner, upon the ground of failure to state a claim upon which relief can be granted, are not well taken and overruled. The Plaintiffs' *Complaint* is deemed sufficient to state viable claims by Coach and Gardner for inducing breach of contract;

(4) The remaining part of the Lenz motion, seeking dismissal of the Plaintiffs' claim against him for inducing breach of contract upon the ground that the statute of limitations has expired, which turns on consideration of the Lenz affidavit, will be addressed pursuant to F.R.C.P. 56. Plaintiffs will file opposing materials in accordance with F.R.C.P. 56(e) twenty-four hours prior to Thursday, April 30, 1981, at which time a hearing on Lenz's motion (treated as one for summary judgment) will be held.